[Civ. No. 42232. First Dist., Div. Two. Nov. 2, 1979.]

RUTH KANE, Plaintiff and Appellant, v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY,
Defendant and Respondent.

COUNSEL

Scott & Kolb, Caldecott, Peck, Phillips & Stewart and Samuel E. Goldstein for Plaintiff and Appellant.

Crosby, Heafey, Roach & May and Stephen A. McFeely for Defendant and Respondent.

OPINION

**ROUSE, J.**—Plaintiff, Ruth Kane, appeals from a judgment of nonsuit in an action for personal injuries. Decision of the trial court was entered upon motion by defendant, Hartford Accident and Indemnity Company (Hartford), following presentation of an opening statement stipulated to contain the facts which plaintiff proposed to prove in support of her complaint.

In March 1971, plaintiff, Ruth Kane, was raped by Eddie Williams upon the premises of a Kaiser Foundation Hospital (Kaiser). Williams was an employee of Certified Janitorial and Window Cleaning Company (Certified), an independent contractor providing services to Kaiser. Williams was bonded by defendant Hartford, it being a requirement of Certified's contract with Kaiser that all its employees possess this independent proof of financial responsibility.

Plaintiff brought suit in January 1972 against Williams, Kaiser, and Certified. In August 1974, she joined Hartford as a defendant to this action by substituting Hartford in place of a Doe defendant named in

her complaint. The trial court overruled Hartford's demurrer that service was improper and a misuse of the fictitious name statute. Certified and Kaiser were dismissed as defendants after settlements of $100,000 and $25,000, respectively. A default against Williams was dismissed for failure to reduce it to judgment.

In November 1976, plaintiff proceeded to trial against Hartford, the sole remaining defendant. After a jury was empaneled, but before opening statements, defendant informed plaintiff and the court that it would make a motion for nonsuit upon completion of the opening statements. In the interest of time, the trial court requested plaintiff to submit a written statement addressed only to the issue of defendant's liability. The court considered this statement and asked that it be expanded to comprise a full offer of proof of the facts plaintiff believed she could produce on the sole issue of defendant's liability. The opening statement and the offer of proof submitted by plaintiff included the following matters, the details of which were not contested by defendant:

Hartford bonded employees of Certified under a blanket commercial bond for a nine-year period ending in 1971. Hartford subjected all applications for bonds to a background investigation of the matters and representations reflected in the application. The burden of conducting these investigations was voluntarily and gratuitously undertaken by Hartford with knowledge that Certified would not hire persons with criminal histories and that Certified was relying upon Hartford's checks to reveal evidence of such activities. In 1967, Hartford determined that the premiums generated by the fidelity bond, $10,000, were insufficient to support the expense of individualized investigations and therefore discontinued this practice without notice to Certified.

Upon completion of a period of probationary employment with Certified, Williams' application for bonding was granted by Hartford in May 1970. Hartford thereby obligated itself to indemnify Certified for any loss suffered or liability incurred to a third person, due to "fraudulent" or "dishonest" acts of Williams. In conformity with its internal policy, Hartford made no investigation of Williams' background and failed to communicate this omission to Certified. Such a check would have revealed that Williams had an extensive record of property-related crimes, including youth commitments and prison terms for burglary, auto theft and robbery. The last recorded convictions were for burglary in 1964. Although Williams subsequently occupied several positions

without incident, Hartford admitted that had it been aware of Williams' record, it would not have issued the bond.

The trial court granted defendant's motion for nonsuit after considering the facts recited in the opening statement and the offer of proof. Nonsuit was granted for two closely interrelated reasons: the trial court declined "to rule as a matter of law that the damage and injury suffered by the plaintiff was within the scope of foreseeable risk and that the defendant owed a duty to the plaintiff." The ruling was reduced to judgment on December 6, 1976, and this appeal followed.

■  The rule governing appellate review of a judgment of nonsuit is set forth in *Raber* v. *Tumin* (1951) 36 Cal.2d 654, 656 [226 P.2d 574]. There, the court specified that nonsuit is warranted when, and only when, the appellate court has examined all the evidence and drawn all the possible inferences that support the plaintiff's cause of action and then determines that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.

Plaintiff's complaint was framed on a theory of negligence alleged with particularity. She contends that a case sufficient to go to trial was made out by her allegations that: incidental to its bond coverage, Hartford assumed the duty of investigating applicants; that Certified knew of this practice and relied upon it to the extent of foregoing making its own inquiries; that Hartford halted the investigations without informing Certified; that Williams was bonded without an investigation which would have disclosed his criminal record; that had the criminal past of Williams been discovered, Hartford would not have issued the bond and Certified would not have assigned Williams to work at Kaiser; and that the breach of this assumed duty was the direct and proximate cause of plaintiff's injuries.

■  The indispensable precondition to liability founded upon negligence is the existence of a duty of care owed by the alleged wrongdoer to the plaintiff, or to a class of which plaintiff is a member. (*McEvoy* v. *American Pool Corp.* (1948) 32 Cal.2d 295, 298-299 195 P.2d 783].)

■  Plaintiff contends that a duty of care was owed her by the defendant, the scope of which is measured by the extent to which defendant voluntarily relieved Certified of the obligation to investigate the criminal histories of applicants for bonding. She cites numerous decisions and collateral sources which, she asserts, support recognition

of this duty. However, we have concluded that none of plaintiff's authorities justify the imposition of liability in a situation such as that before us.

The threshold determination that a duty is owed the plaintiff is a question of law within the exclusive province of the court. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123, Cal.Rptr. 468, 539 P.2d 36].) A determination that as a matter of law no duty is owed to the plaintiff is particularly common in situations in which the defendant's responsibility for the activities of third persons is involved. (*Richards* v. *Stanley* (1954) 43 Cal.2d 60, 67 [271 P.2d 23].) Among the various policy considerations whose aggregate effect comes to be stated in terms of the legal conclusion that there is a "duty," foreseeability of the risk actually encountered is of primary importance. (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 739 [69 Cal.Rptr.72, 441 P.2d 912, 29 A.L.R.3d 1316].)

The trial court found, as a matter of law, that plaintiff had suffered a harm the risk of which was not foreseeable by defendant, thus precluding her recovery. In his written decision, the trial judge cited *Palsgraf* v. *Long Island R. Co.* (1928) 248 N.Y. 339 [162 N.E. 99, 59 A.L.R. 1253], to bolster his conclusion, and both parties now seek to strengthen their respective positions by reference to this venerable precedent. *Palsgraf* initiated the modern theory of duty and proximate cause in the law of negligence.

Mrs. Palsgraf had purchased a ticket for defendant's railroad. She was standing on the station platform when a man carrying a package wrapped in newspaper rushed to board a train just pulling out of the station. As he reached the train car, he faltered. He was pulled aboard by a conductor on the train, and simultaneously pushed from behind by a guard on the platform. The package, which contained fireworks, fell upon the tracks and exploded. The shock of the detonation caused a set of scales at the other end of the platform to topple onto the plaintiff. She brought suit for the injuries which resulted.

Speaking for a closely divided court, Chief Judge Cardozo said that while the conduct of the railroad's servants may have been negligent in relation to the other passenger, "[r]elatively to her it was not negligence at all. Nothing in the situation gave notice that the falling package had in it the potency of peril to persons thus removed." (P. 99.) Any negligence by defendant must have some concrete reference to a duty owed

plaintiff: she could not maintain a suit as the vicarious beneficiary of a breach of duty to another.

Rather than continue adherence to the common law rule that a negligent actor is responsible for all the consequences of his act, however freakish or unforeseeable, the court formulated a new rule to determine when liability would halt. Henceforth, a plaintiff injured by an act of negligence to which he was not a direct party must show a breach of a duty which unreasonably increased the likelihood that a hazard within the range of ordinary apprehension would occur. A duty would be found only as the antecedent to the foreseeable harm which befell plaintiff. In Judge Cardozo's phrase, "the orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty." (P. 100.)

The problems presented by the facts of this case are not unlike those in *Palsgraf*. At the outset, it may be conceded that, relative to Certified, Hartford's discontinuance of the gratuitous investigations when it had knowledge that Certified had refrained from making its own checks in reliance thereon, may have been wrongful. Indeed, Certified's cross-complaint against Hartford sought to determine this very point. If so, plaintiff here is in the same position as Mrs. Palsgraf; she is not a direct party to the original act of negligence.

Plaintiff seeks to avoid the plain effect of *Palsgraf* and her lack of privity to either of the parties to the bond by arguing that a duty was created, not because of the normal rules of foreseeability, but rather as a "special relationship" exception to the rule that a nonprivy party cannot sue as the vicarious beneficiary of a breach of duty to another.

Contrary to plaintiff's contention, this case is readily distinguishable from *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d. 1166]. *Tarasoff* was a suit for damages brought by the parents of a young woman murdered by a former mental patient who had disclosed to a psychotherapist during the course of his treatment his intention to kill the victim. The California Supreme Court there held that a cause of action had been stated against the psychotherapist based upon his failure to warn the victim or others likely to apprise her of her peril. It is evident that in *Tarasoff,* the therapist had knowledge that (1) a specific

person (2) threatened a specific type of harm (murder) to (3) a specifically designated victim. Lastly, there existed a special relationship at the time. (Pp. 432, 436.)

All of these factors are absent here. Hartford had no reason to suspect that Williams represented a latent threat of physical harm to anyone. Even if it had investigated Williams' past, Hartford would have discovered that the foreseeable risk, if any, was for property-related crimes, not violent crimes to persons. Least of all did Hartford have any indication that Williams' criminal impulses had, or would, come to focus on plaintiff.

None of the authorities upon which plaintiff relies support her position. She contends that section 324A of the Restatement Second of Torts, *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 1b, 65 H.L.R.2d 1358], and *Donald* v. *Garry* (1971) 19 Cal.App.3d 769 [97 Cal.Rptr. 191, 45 A.L.R.3d 1177], established defendant's liability because it failed to exercise reasonable care in the performance of a gratuitously assumed undertaking. The undertaking here would be Hartford's investigation of Certified's applicant/employees. All of these sources are distinguishable from the instant case.

An examination of section 324A[1] shows that the "third person" it speaks of would, in this case, be Kaiser, not plaintiff. The tenor of comment a to section 324A, and of the entire section, would focus attention upon what duties Hartford would owe to Kaiser; also, it is apparent that section 324A speaks only of Hartford's duty to protect Kaiser against the risk of "physical harm." The section is inapplicable, assuming that Kaiser would be the intended beneficiary of the investigation, since the harm foreseeable to Kaiser would have to be property-related: Kaiser, being an artificial entity, could not suffer physical harm. The section is predicated upon, and in no way alters, the traditional requirement of a foreseeable harm to a foreseeable class of plaintiffs. It cannot be too often reiterated that the plaintiff here cannot bring herself within this category.

[1]Section 324A of the Restatement Second of Torts states: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if [¶] (a) his failure to exercise reasonable care increases the risk of such harm, or [¶] (b) he has undertaken to perform a duty owed by the other to the third person, or [¶] (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

The cases cited by plaintiff only reemphasize the weakness of her position. *Biakanja* v. *Irving, supra,* 49 Cal.2d 647, allowed monetary damages to a beneficiary of a will negligently attested by a notary public. Imposition of liability for injuries to *intangible interests* was allowed, partly because the defendant was held to have violated the law prohibiting the unauthorized practice of law, and partly because non-privy plaintiff's interests were known to defendant. Given her designated status as the named legatee, it was forseeable that her interests would suffer were the will to be voided for inadequate solemnization, for "the 'end and aim' of the transaction was to provide for the passing of [the] estate to plaintiff." (P. 650.) Similarly, in *Donald* v. *Garry supra,* 19 Cal.App.3d 769, an attorney who failed to diligently prosecute a case was held liable for damages "caused by his negligence to a person *intended to be benefited* by his performance..." (P. 771; italics added.)

Plaintiff relies upon *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674], to support her contention that Hartford owed her a duty to investigate the background of bond applicants despite her nonprivy status. Defendant professes itself at a loss to comprehend the relevancy of this precedent to the instant case. We share this concern. The only apparent applicability of *Barrera* was its holding that the insurer there owed a duty to third persons to investigate the applicants. But *Barrera* is easily distinguishable from this case.

Barrera sued an insurer to recover an unsatisfied judgment against the policyholder. The insurer claimed that the policy was invalid because the insured had misrepresented his driving record on his application for coverage. The California Supreme Court held that the contract could not be rescinded despite the misrepresentations because the "quasi-public" nature of the insurance industry and the public policy underlying the Financial Responsibility Law (Veh. Code, § 16000 et seq.) imposed upon an automobile liability insurer a duty, running to both the insured and the public, to conduct a reasonable investigation of an applicant's insurability within a reasonable time after issuance of the policy. (Pp. 669-673.) Because it had not conducted such an investigation, the insurer was held estopped to deny coverage of the policy once suit had been brought.

Several obvious factors differentiate this case from *Barrera.* The non-privy party in *Barrera* suffered the precise hazard that the policy contemplated—injury to her person as a result of being struck by the insured's car. By contrast, the plaintiff here cannot claim that the rape she suffered was a "fraudulent" or "dishonest" act within the meaning of the fidelity bond.

It is also evident that Kaiser, not plaintiff, was the party most likely to have been intended by the parties to the contract to be compensated in the event Williams committed one of the defalcations specified in the bond. Finally, we note that the defendant here, unlike the insurer in *Barrera,* is not attempting to deny coverage because plaintiff has not brought suit under the bond.

Plaintiff's reliance upon *Barrera.* suggests the possibility that she may consider herself to be a third party beneficiary of the contract between Certified and Hartford. It is arguable that the Financial Responsibility Law bestowed this status upon Mrs. Barrera. It is not plausible to maintain that plaintiff, for all her discussion of duty, occupies a similar position.

Section 1559 of the Civil Code is applicable only where a contract was made "expressly for the benefit of a third person..." While it is possible that recovery could be had by Kaiser because it was guaranteed compensation for the fraudulent or dishonest acts of Certified's employees, our discussion has shown that this degree of protection was not meant to be extended to plaintiff.

The issue of proximate cause is as hotly disputed by the parties as was the issue of duty. ■ Ordinarily, proximate cause is a question of fact, but where, as here, the facts are undisputed, and only one conclusion may be drawn therefrom, it becomes one of law. (*Azcona v. Tibbs* (1961) 190 Cal.App.2d 425, 428 [12 Cal.Rptr. 232].)

Mention was made earlier in connection with the discussion of *Palsgraf v. Long Island R. Co., supra,* 162 N.E. 99, that Hartford's conduct may have been wrongful as to Certified. The next stage of analysis is to examine the applicability of the rule that an original act of negligence is not a proximate cause when the injury directly results from the intervening act of another, which act is not to be reasonably anticipated by the first party as likely to occur and follow through from his own act. (*Stasulat v. Pacific Gas and Elec. Co.* (1937) 8 Cal.2d 631, 637 [67

P.2d 678].) Foremost among these intervening superseding forces which negate the original act of negligence is the criminal act of another party.

The common law rule that an intervening criminal act is, by its very nature, a superseding cause has lost its universal application and its dogmatic rigidity. Like the doctrine of contributory negligence, intervening criminal action is no longer a total bar to recovery. Rather it is one consideration among many. The qualitative importance it will be accorded varies with each factual setting. California has adopted the modern view embodied in section 448 of the Restatement Second of Torts: "The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime." Present California decisions establish that a criminal act will be deemed a superseding cause unless it involves a particular and foreseeable hazard inflicted upon a member of a foreseeable class. (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 163-164 [95 Cal.Rptr. 623, 486 P.2d 151]; *Richardson* v. *Ham* (1955) 44 Cal.2d 772, 777 [285 P.2d 269].)

Recognizing its applicability, both parties claim the support of section 448 for their respective positions. Defendant interprets section 448 as a bar to its liability because the hazard encountered by the plaintiff, the rape by an employee of Certified, was not foreseeable at the time it bonded Williams. Plaintiff uses comment c to the section to buttress her contention that Williams' act was foreseeable and thus not a superseding cause. In relevant part, comment c says that "The actor's conduct may be negligent solely because he should have recognized that it would expose the person, land, or chattels, of another to an unreasonable risk of criminal aggression."

The better reading of section 448 supports both the defendant's construction and the decision of the trial court. Comment a to the section makes its rule applicable: "[W]hen the actor's conduct creates a situation which is utilized by a third person to inflict intentional harm upon another or provides a temptation to do so to which the third person yields, but the actor has no reason to expect that the third person would

so act...the actor is not responsible for the harm thus inflicted merely because the situation which his negligence has created has afforded an opportunity or temptation for its infliction."

This provision has particular relevancy here. It is predicated upon a condition absent in this case, namely, Hartford's possession of information which at the time it acted would make reasonably foreseeable the occurrence of a particular risk later encountered. Even if defendant had discovered Williams' past criminal activities, it would have put Hartford on notice only that Williams might foreseeably revert to his propensity for committing property-related crimes. It would not have indicated that a violent criminal act directed against the person of an unforeseeable plaintiff was either contemplated or impending.

The causal reasoning urged by plaintiff has been repeatedly rejected by the courts in cases where direct actions against insurers have been brought by third persons seeking the judicial establishment of affirmative duties in their favor. The duty of investigation has been explicitly rejected.

In *Skerlec* v. *Wells Fargo Bank* (1971) 18 Cal.App.3d 1003, 1007 [96 Cal.Rptr. 434], the court declined to recognize a duty by an insurer to verify a borrower's solvency. It also rejected the plaintiff's contention that, but for the defendant's making of the loan to the driver, the injury would not have occurred because the uninsured motorist would not have been able to buy a car and therefore would not have been on the roads and in a position to injure the plaintiff. (Pp. 1005-1007.)

In *Nipper* v. *California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35 [136 Cal.Rptr. 854, 560 P.2d 743], the California Supreme Court likewise rejected the "but for" causation analysis offered by the plaintiff. That contention, which closely resembled that unsuccessfully advanced in *Skerlec,* was to the effect that had CAARP rejected the application and informed the Department of Motor Vehicles, the department would have revoked the driver/applicant's license. (P. 40.) The theory that but for this negligence the driver would not have been out on the roads was rejected as inadequate to constitute the direct and proximate cause of plaintiff's injuries. (Pp. 46-47.)

Finally, we have examined four additional cases cited to us by plaintiff since oral argument: *Marasco* v. *Wadsworth* (1978) 21 Cal.3d 82 [145 Cal.Rptr. 843, 578 P.2d 90]; *Bigbee* v. *Superior Court* (1979) 93

Cal.App.3d 451 [155 Cal.Rptr. 545]; *Duarte v. State of California* (Cal.App.); and *Thompson* v. *County of Alameda* (Cal.App.) *Marasco* and *Bigbee* are factually distinguishable and provide no support for her contentions. The California Supreme Court directed the Reporter of Decisions not to publish *Duarte* in the official reports, and granted petition for hearing in *Thompson* (S.F. 24006); therefore, these cases may not be considered on appeal.

We conclude that the trial court correctly decided that, as a matter of law, plaintiff could not prevail on the facts presented. The body of doctrine and decisional law existing at present supports this ruling that plaintiff was an unforeseeable plaintiff. In addition, she could not establish a sufficient causal link that would avoid the clear effect of numerous precedents. Because no duty was owed, there could be no cause of action. Hence, plaintiff's cause was properly nonsuited.

In view of our determination of this issue, we deem it unnecessary to consider Hartford's additional contention that the trial court ought to have sustained its demurrer without leave to amend because it was improperly substituted in place of a Doe defendant.

The judgment of nonsuit in favor of Hartford and against plaintiff Kane is affirmed.

Taylor, P. J., and Miller, J., concurred.

A petition for a rehearing was denied November 30, 1979.