[Civ. No. 57088. Second Dist., Div. Three. June 25, 1980.]

WILLIAM HOOKS III, a Minor, etc., Plaintiff and Appellant, v. SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, Defendant and Respondent.

COUNSEL

Ronald M. Cohen for Plaintiff and Appellant.

Thelen, Marrin, Johnson & Bridges, Curtis A. Cole and Michael L. Halpern for Defendant and Respondent.

OPINION

KLEIN, P. J.—Plaintiff and appellant William Hooks III (Hooks) appeals from a summary judgment granted to defendant and respondent Southern California Permanente Medical Group (Hospital).

### FACTUAL BACKGROUND

The factual background set forth herein for purposes of the comprehensibility of this opinion is gleaned from pleadings and papers in this case consisting of the complaint, the deposition of Norma Armistead, Hooks' answers to interrogatories, the motion for summary judgment and its supporting and opposing papers.[1]

Norma Armistead (Armistead) began working as an obstetric nurse in 1965. She worked at Martin Luther King Hospital prior to her employment by Kaiser Foundation Hospital.[2]

Some time before Armistead began working at the Hospital in approximately 1974, she met Hooks' mother, Kathryn Viramontes (Viramontes), at the Raco Bar in Hollywood. They formed a social friendship.

---

[1] Pursuant to rule 12(a) of the California Rules of Court, we have made the superior court file and exhibits a part of the record on appeal.

[2] Hereinafter Southern California Permanente Medical Group and Kaiser Foundation Hospital will be referred to interchangeably as Hospital.

In the fall of 1974, while Armistead was employed by and on duty at the Hospital, she delivered Mary Childs of a baby girl. During the delivery, she was unassisted by any physician, contrary to normal practice. Armistead substituted a dead fetus for the Childs baby and reported a stillbirth. Until Armistead came on duty and began assisting in the Childs delivery, records indicated a routine delivery with a normal fetal heartbeat. When a physician arrived to certify the death of the supposed Childs fetus, he noticed that the umbilical cord had been cut. This was normally left for the attending physician to do. No report was made and no investigation was undertaken at this time. Armistead thereafter began raising the Childs baby in her home.

Some eight months later, about May 1975, Viramontes was pregnant and near delivery. She telephoned Armistead at home and asked her help in inducing labor. There were several conversations during which Viramontes continued to ask Armistead for help. Viramontes knew that Armistead worked at the Hospital. She asked for Armistead's help because of Armistead's experience in labor and delivery. Moreover, Viramontes knew that Armistead would have access to the drugs, scalpel, and anesthesia necessary to induce labor. Armistead agreed to help Viramontes only because she could procure the necessary items.

Armistead never represented to Viramontes that any services she might perform to induce labor were related to her employment or were authorized by the Hospital. Viramontes had never been a patient of the Hospital.

On May 16, 1975, Armistead went to Viramontes' home to induce labor. They began arguing over Viramontes' relationship with Armistead's boyfriend. In the course of the argument, Armistead killed Viramontes by slashing her throat, after which Armistead delivered Hooks by caesarean section.

Some four months later Hooks filed a wrongful death action against Armistead and the Hospital.

STATEMENT OF THE CASE

The original complaint for wrongful death was filed on September 23, 1975. Subsequently, first and second amended complaints were filed. The Hospital demurred to the second amended complaint and the trial court sustained that general demurrer without leave to amend on

April 29, 1976. An order dismissing the action was entered, and an appeal followed.

The Court of Appeal, Second Appellate District, affirmed the dismissal of the second and fourth causes of action, but reversed the dismissal of the third cause of action.[3] The case was remanded for further proceedings.

In January 1978, Hooks answered interrogatories propounded by the Hospital wherein he stated that he had "no knowledge that . . . Viramontes was a patient at the Kaiser Foundation Hospital." The Hospital and Hooks then took Armistead's deposition in October 1978.

On March 1, 1979, the Hospital filed a motion for summary judgment, supported by a declaration from the director of hospital records to the effect that there was no record that Viramontes was ever a patient at the Hospital. Relying on this declaration, the answers to interrogatories and Armistead's deposition testimony, the Hospital grounded its motion primarily on the contention that the Hospital owed no duty to Viramontes.

Hooks responded in opposition to the motion primarily on the ground that a duty was owed to Viramontes irrespective of her status as a patient. A hearing on the motion was held, and an order granting the motion was entered on March 20, 1979. This appeal followed.

CONTENTIONS

Hooks contends that the trial court erred in granting a summary judgment to the Hospital because the Hospital owed a duty of care to Hooks and Viramontes as a matter of law. Hooks bases his contention on the following: (1) the duty of care Hospital owed to Viramontes was independent of any hospital-patient relationship; (2) rather, the special relationship between the Hospital and Armistead, Armistead being the employee whose aberrant and dangerous conduct needed to be controlled, imposed a duty of care on the Hospital owed to a class of persons which included Viramontes; (3) because the class of persons foreseeably endangered by Armistead's conduct encompassed her

---

[3](2d Civil No. 49185, Dec. 30, 1976.) The first and fifth causes of action were irrelevant to proceedings between Hooks and the Hospital. The third cause of action therein involved was based on a theory of negligent employment of Armistead.

friends who would rely on Armistead's professional skill, experience, and standing.

Hooks further avers that given a legal duty owed to Viramontes, the question of proximate cause is an issue of material fact.

Assuming that the Hospital was correctly sued,[4] we disagree with Hooks' first contention and as a consequence do not reach his second contention and affirm the summary judgment for the reasons set forth below.

### DISCUSSION

■ We note at the outset that Hooks' notice of appeal purports to appeal from the order granting summary judgment. That order is not appealable. (*Crookham* v. *Smith* (1977) 68 Cal.App.3d 773, 775, fn. 1 [137 Cal.Rptr. 428]; *Artucovich* v. *Arizmendiz* (1967) 256 Cal.App.2d 130, 132 [63 Cal.Rptr. 810]; see *Johnson* v. *Hydraulic Research & Mfg. Co.* (1977) 70 Cal.App.3d 675, 685 [139 Cal.Rptr. 136].) However, because there is a judgment which was entered on April 10, 1979, to which the order may be applied, we honor the appeal as one taken from the judgment. (*Crookham* v. *Smith, supra*, at p. 775, fn. 1; *Artucovich* v. *Arizmendiz, supra*, at p. 132.)

Code of Civil Procedure section 437c provides that a motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." ■ The purpose of a motion for summary judgment is "to penetrate through evasive language and adept pleading and ascertain the existence or absence of triable issues. [Citations.]" (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) The court resolves the question of triable issues by examining "support[ing] or oppos[ing]...affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice...may be taken." (Code Civ. Proc., § 437c.) The court must consider presumptions and draw inferences from the facts adduced where the inference is the only reasonable one that may be drawn. (See *Hirsch* v. *Blish* (1977)

---

[4]Hospital has been described in each pleading as "a partnership dba Kaiser Foundation Hospital." In each responsive pleading, it has pointed out that it was erroneously thus served, but failed to pursue this point further.

76 Cal.App.3d 163, 166 [142 Cal.Rptr. 646]; *Hale* v. *George A. Hormel & Co.* (1975) 48 Cal.App.3d 73, 81 [121 Cal.Rptr. 144].) However, the court has no power in a summary proceeding to weigh one inference against another or against other evidence. (*Brown* v. *City of Fremont* (1977) 75 Cal.App.3d 141, 145 [142 Cal.Rptr. 46].)

■ In ruling on a motion for summary judgment, "[t]he determination whether facts have been adduced...which present triable issues of fact is to be made in the light of the pleadings." (*Leasman* v. *Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 380 [121 Cal.Rptr. 768]; see *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 262 [223 P.2d 244].) However, the court may only examine the pleadings in order to define the issues of which summary judgment disposes. (*Koret of Cal., Inc.* v. *City etc. of San Francisco* (1969) 2 Cal.App.3d 87, 90 [81 Cal.Rptr. 698]; *Family Service Agency of Santa Barbara* v. *Ames* (1958) 166 Cal. App.2d 344, 348 [333 P.2d 142].) The court may not consider the factual allegations of the complaint except where the facts stated are uncontroverted by the papers submitted on the motion. (*Wiler* v. *Firestone Tire & Rubber Co.* (1979) 95 Cal.App.3d 621, 626 [157 Cal. Rptr. 248]; *McCreery* v. *Eli Lilly & Co.* (1978) 87 Cal.App.3d 77, 82 [150 Cal.Rptr. 730].) Accordingly, reference may not be made to a party's pleadings to remedy a factual deficiency in his supporting or opposing papers. (*Koret of Cal., Inc.* v. *City etc. of San Francisco, supra*, at p. 90; *Michelman* v. *Frye* (1965) 238 Cal.App.2d 698, 702 [48 Cal. Rptr. 142].)

■ The sufficiency of the papers submitted is reviewable on appeal and is determinative of the validity of the judgment. (*Koret of Cal., Inc.* v. *City etc. of San Francisco, supra*, 2 Cal.App.3d at p. 89; see *Dreyfuss* v. *Burton* (1966) 246 Cal.App.2d 629, 632 [54 Cal.Rptr. 843].) Because the summary procedure is drastic, the papers filed on behalf of the moving party are strictly construed and those of his opponent are liberally construed. (*Lacy* v. *Laurentide Finance Corp.* (1972) 28 Cal. App.3d 251, 256 [104 Cal.Rptr. 547]; *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 285 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].) Every reasonable doubt must be resolved in favor of the complaint. (*Wiler* v. *Firestone Tire & Rubber Co., supra*, 95 Cal.App.3d at pp. 626-627; *Cox* v. *State of California* (1970) 3 Cal.App.3d 301, 310 [82 Cal.Rptr. 896].)

In order to apply the principles of law governing summary judgment to the case at bar, we must first consider the substantive law of negli-

gence. ■ Civil Code section 1714 provides that a person is liable for injuries caused by his failure to exercise ordinary care under the circumstances. However, the law requires more than a mere failure to exercise care and a resulting injury. There must be a legal duty to exercise care under the circumstances, owed to the person injured, and a breach of that duty must be the proximate cause of the resulting injury. (*Peter W.* v. *San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814, 820 [131 Cal.Rptr. 854]; *Valdez* v. *J. D. Diffenbaugh Co.* (1975) 51 Cal.App.3d 494, 504 [124 Cal.Rptr. 467].) Thus, the determination that a duty of care exists is an essential precondition to liability founded on negligence. (*Kane* v. *Hartford Accident & Indemnity Co.* (1979) 98 Cal.App.3d 350, 354 [159 Cal.Rptr. 446]; *McEvoy* v. *American Pool Corp.* (1948) 32 Cal.2d 295, 298-299 [195 P.2d 783].) Accordingly, our first determination must be whether the Hospital owed a legal duty of care to Viramontes.

■ As the Court of Appeal noted in *Kane* v. *Hartford Accident & Indemnity Co., supra,* 98 Cal.App.3d at page 355: "The threshold determination that a duty is owed the plaintiff is a question of law within the exclusive province of the court. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) A determination that as a matter of law no duty is owed to the plaintiff is particularly common in situations in which the defendant's responsibility for the activities of third persons is involved. (*Richards* v. *Stanley* (1954) 43 Cal.2d 60, 67 [271 P.2d 23].) Among the various policy considerations whose aggregate effect comes to be stated in terms of the legal conclusion that there is a 'duty,' foreseeability of the risk actually encountered is of primary importance. (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 739 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)" ■ Although foreseeability is normally a question of fact, it becomes a question of law where reasonable minds cannot differ. (*Richards* v. *Stanley* (1954) 43 Cal.2d 60, 66-67 [271 P.2d 23].)

■ Hooks contends that a duty to Viramontes was created within the "special relationship" exception to the rule set forth in *Richards* v. *Stanley, supra,* 43 Cal.2d at page 67, that one owes no duty to control the conduct of third persons. He argues that the status of the Hospital and Armistead as employer and employee created the requisite special relationship and devolved on the Hospital a duty to control or warn against Armistead's conduct. In support of his argument, Hooks relies on *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].

*Tarasoff* addressed the issue of a psychotherapist's liability for the murder of a young woman by his patient who had disclosed to him an intention to kill the victim. The California Supreme Court held that a cause of action had been stated against the psychotherapist based upon his failure to warn the victim or others likely to apprise her of her peril.

The Supreme Court did predicate the psychotherapist's duty to warn on the existence of a special relationship involving confidence and trust or special knowledge. (*Tarasoff* v. *Regents of University of California, supra*, 17 Cal.3d at pp. 436-437.) However, an even more important factor in the imposition of liability was a foreseeable risk of harm to a foreseeable victim. (*Id.*, at pp. 432-435.) Thus, while the relationship of employer and employee may indeed involve special knowledge or confidence, Hooks' reliance on that relationship alone begs the question.

*Tarasoff* involved the highest degree of foreseeability. A psychotherapy patient with a past mental history expressed his intent to kill a specific person. This state of mind revealed an imminently foreseeable risk of harm to a readily identifiable victim.

In contrast, the instant case does not involve anything near that degree of foreseeability. Rather, it resembles closely a series of cases subsequent to *Tarasoff* which refused to extend liability. The common thread running through these later cases is that to come within the *Tarasoff* rule of liability, the relationship involved must put one on notice that a specific, rather than a generalized, risk exists. Moreover, one must know that the target of the risk is an identifiable and foreseeable victim. (*Kane* v. *Hartford Accident & Indemnity Co., supra*, 98 Cal. App.3d 350, 355-357; *McDowell* v. *County of Alameda* (1979) 88 Cal. App.3d 321, 324 [151 Cal.Rptr. 779]; *J. A. Meyers & Co.* v. *Los Angeles County Probation Dept.* (1978) 78 Cal.App.3d 309, 312-313 [144 Cal.Rptr. 186].)

*McDowell* v. *County of Alameda* involved a suit for damages against a county hospital. Doctors in the psychiatric ward diagnosed a patient as a violent threat to himself or others. They transferred him to another hospital by taxi. The patient failed to arrive at the receiving hospital, and some days later killed the plaintiff's husband. The trial court granted a motion for judgment on the pleadings; the Court of Appeal affirmed, refusing to impose liability. The court noted that no facts had been alleged to suggest either a relationship between the patient and the victim or a particular threat of harm which would have encompassed the

victim. The court stated: "Respondents do not owe a duty to society because Jones' behavior may constitute a danger to *any* person." (*McDowell* v. *County of Alameda, supra*, 88 Cal.App.3d at p. 325; italics added.)

In the instant case, Hooks has presented no facts to suggest that the Hospital knew of the relationship between Armistead and Viramontes. They met socially, before Armistead was employed by the Hospital. Viramontes was never the Hospital's patient. Moreover, the Hospital had no opportunity to know of a particular threat of harm which would have encompassed Viramontes. Assuming arguendo that a prompt investigation would have revealed that Armistead had taken the Childs baby and that such conduct would have implied a risk of great bodily injury or death, the Hospital would have had no reason to know that the threat would extend to someone outside the range of Armistead's activities within the Hospital. There was even less reason for the Hospital to suspect that such a threat might encompass a bizarre killing by throat slashing in the victim's home as a result of an argument over a man while one of its nurses was inducing labor.

In arguing that Viramontes was a foreseeable victim, Hooks really contends that the risk of harm encompassed all pregnant women anywhere who were acquainted with Armistead in any way during the period of her employment at the Hospital. That sweeping class of persons is nearly as broad as the "society at large" argument rejected in *McDowell*.

The case at bar is even more closely related to *Kane* v. *Hartford Accident & Indemnity Co., supra*, 98 Cal.App.3d 350. In *Kane*, a woman was raped on hospital premises by an employee of an independently contracted janitorial service. She joined Hartford as a defendant, alleging that Hartford was negligent in bonding the employee because it failed to investigate, discover and warn against his past criminal history. Her theory was that because bonding was a requirement of his employment, he would have been fired had Hartford refused to bond him on the basis of his past record, and therefore would have been no threat to the plaintiff.

The trial court granted a nonsuit, finding the connection between Hartford's acts and the resulting injury too tenuous. The Court of Appeal affirmed, holding that the plaintiff had suffered a risk of harm which was not foreseeable by Hartford. The court stated: "Hartford

had no reason to suspect that Williams represented a latent threat of physical harm to anyone. Even if it had investigated Williams' past, Hartford would have discovered that the foreseeable risk, if any, was for *property-related crimes*, not violent crimes to persons. Least of all did Hartford have any indication that Williams' criminal impulses had, or would, come to focus on plaintiff." (*Kane* v. *Hartford Accident & Indemnity Co., supra*, 98 Cal.App.3d at p. 357; italics added.)

The appellate court's analysis in *Kane* applies with force to the facts at hand. Even assuming an investigation which had disclosed Armistead's switching the dead fetus for the live birth, the Hospital would have had no indication that Armistead's criminal impulses would focus on Viramontes. The methods Armistead used in her scheme to take the Childs baby from the Hospital centered on the events, responsibilities, and opportunities she encountered while on duty at the Hospital. Her acts do not lead logically to the conclusion that she would attempt a similar scheme outside the Hospital. Furthermore, it would require a quantum leap in logic to find a foreseeable risk of great bodily injury or death.

Hooks presents no facts to suggest that Armistead inflicted physical injury on anyone or committed any violent act during the baby-switching incident. Rather, Armistead used sleight of hand in substituting a dead fetus and took the Childs baby to raise as her own. Armistead's criminal acts closely resemble a subtle fraud. There is nothing in these facts to suggest a latent threat of physical harm to anyone.[5]

Hooks next advances an alternative argument based upon his contention that it is reasonably foreseeable that a friend of a medical professional will turn to that person for medical assistance. He argues that the Hospital should have foreseen that a pregnant friend of Armistead would enter into a relationship of dependence with her based on her skill and expertise, and that this dependence imposed on the Hospi-

---

[5]Hooks argues. strenuously that the element of foreseeability is satisfied because the Hospital should have foreseen that a friend of a medical professional will turn to that person for expert medical assistance. Again, this begs the question. As discussed in *Kane* v. *Hartford Accident & Indemnity Co., supra*, 98 Cal.App.3d at pages 355-357, what must be present is foreseeability of the risk *actually encountered*. Thus, in *Kane*, it was of no consequence that it was foreseeable to the bonder that someone on the premises of the hospital would be vulnerable to an employee. What mattered was the degree of foreseeability that an employee with a past history of nonviolent crimes would commit a rape. So, here, our only concern is whether it was foreseeable that Armistead would inflict serious bodily injury or death.

tal a duty to see to Viramontes' welfare. Hooks' reliance on *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82] only emphasizes the weakness of his position.

*Mann* imposed liability on a highway patrolman who had stopped to investigate two stalled cars on a busy freeway. It was raining heavily. The officer called a tow truck, but set no flares or warnings other than the flashing lights of his patrol vehicle. When the tow truck arrived, he left the scene without advising the occupants, some of whom were out of their vehicles and in the freeway lane. The officer did not determine whether both cars could be handled, or that the tow truck was in a protective position. A few minutes later, one stalled car and some of the people around it were struck by an oncoming car. The Court of Appeal held that once the officer chose to investigate the plight of the particular motorists and informed himself of foreseeable danger from passing traffic, a special relationship of dependency arose which created a duty of care. (*Mann* v. *State of California, supra*, 70 Cal.App.3d at p. 780.)

Thus, *Mann* did not deal with the sort of vicarious responsibility for another's foreseeable relationship of dependence which Hooks proposes. *Mann* deals straightforwardly with the duty created by an actual, existing relationship of dependence between the victim and the person upon whom liability is imposed.

Hooks presents no facts which support the inference that there was a relationship of dependence between Viramontes and the Hospital. The Hospital did not treat Viramontes on its premises as a patient. It neither recommended Armistead's services, nor authorized her treatment of Viramontes or anyone else outside the Hospital's premises. In fact, the Hospital had no relationship with Viramontes at all. The mere possibility that the Hospital might have foreseen that a friend of a nurse would depend on the nurse for medical treatment does not bring the Hospital within the "expanding concept in tort law...[of] recognition of the duty to aid or protect in any relation of dependence...." (*Mann* v. *State of California, supra*, 70 Cal.App.3d at pp. 779-780.)

Hooks also contends that the trial court erroneously granted a summary judgment because proximate cause is a question of fact. (9) Ordinarily, proximate cause is a question of fact, but where the facts are undisputed and only one conclusion can be drawn, it is a question of law. (*Kane* v. *Hartford Accident & Indemnity Co., supra*, 98 Cal.App. 3d at p. 359; *Azcona* v. *Tibbs* (1961) 190 Cal.App.2d 425, 428 [12

Cal.Rptr. 232].) However, because we find no duty of care and thus lack an essential precondition to liability founded on negligence (*Kane v. Hartford Accident & Indemnity Co., supra*, at p. 354), we need not reach the issue of whether proximate cause involves a question of fact in the instant case.

The judgment is affirmed.

Allport, J., and Potter, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 20, 1980.