[Civ. No. 61412. Second Dist., Div. One. Aug. 31, 1981.]

BERNICE E. MEGEFF et al., Plaintiffs and Appellants, v.
CHARLOTTE DOLAND et al., Defendants and Respondents.

**COUNSEL**

Joseph W. Fairfield for Plaintiffs and Appellants.

Chase, Rotchford, Drukker & Bogust, Hermine Daniels, Goldman & Cowan, Henry N. Cowan and Jonathan Greenspan for Defendants and Respondents.

## OPINION

### SPENCER, P. J.—

#### INTRODUCTION

Plaintiffs Herman and Bernice E. Megeff appeal from a judgment on the pleadings entered in favor of defendant Thea Stevens and a summary judgment entered in favor of defendant Charlotte Doland.

#### BACKGROUND

In mid-October 1978, Charles Stevens (the 87-year-old husband of defendant Thea Stevens) was admitted to Cedars-Sinai Hospital for treatment of a cardiac condition. Some time thereafter, he exhibited aggressive behavior, pushing or striking an intern and threatening a nurse. As a result, he was transferred to the hospital's psychiatric wing. Approximately 10 days after his admission to the hospital, Charles Stevens was released and returned to the apartment he shared with his wife, defendant Thea Stevens.

On November 1, 1978, Charles Stevens approached plaintiff Herman Megeff in the vicinity of 226 North Crescent Drive in Beverly Hills and, without provocation, stabbed him with a pointed object. Herman Megeff retreated to his apartment. A short time later, Charles Stevens gained access to the plaintiffs' apartment at the above address, again stabbed Herman Megeff and also stabbed plaintiff Bernice Megeff. Criminal proceedings were later instituted against Charles Stevens, but were suspended on the ground that he lacked the mental capacity to stand trial for his offenses. (Superior court file No. A 078131.) Defendant Charlotte Doland is the adult married daughter of Charles and Thea Stevens.

#### CONTENTIONS

Plaintiffs contend that the trial court erred in granting judgment on the pleadings and summary judgment in that plaintiffs were entitled to relief on their complaint against defendant Thea Stevens and triable issues of material fact existed as to the liability of defendant Charlotte Doland.

## DISCUSSION

The gravamen of plaintiffs' complaint is that Charles Stevens' wife and daughter had voluntarily assumed his custody and control over his conduct with knowledge that his propensity for violence posed a risk of harm to third persons, and they negligently failed to exercise sufficient control over his conduct to prevent harm to third persons as a result of which, plaintiffs were injured. In other words, plaintiffs maintain that defendants owed a duty to so control the conduct of Charles Stevens as to avoid harm to plaintiffs.

As stated in *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]: "[L]egal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done." Civil Code section 1714, subdivision (a) is California's expression of policy in this regard, imposing liability "for an injury occasioned to another by [one's] want of ordinary care or skill . . . ." ▆ Thus, it is fundamental that whenever circumstances are such that one person's failure to use ordinary care in his conduct would cause a danger of injury to the person or property of another, a duty arises to use ordinary care to avoid that danger. (*Rowland v. Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

Departure from this principle requires the balancing of a number of factors; the primary ones "are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Id.*, at p. 113.)

The most important of the enumerated factors in establishing a duty is foreseeability. ▆ Ordinarily, one owes a duty of care to "'all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous.'" (*Tarasoff v. Regents of University of California, supra*, 17 Cal.3d 425, 435; quoting *Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 399 [115

Cal.Rptr. 765, 525 P.2d 669].) However, when the avoidance of foreseeable harm requires one to control the conduct of a third person, special rules come into play.

In general, one owes no duty to control the conduct of another person (*Richards* v. *Stanley* (1954) 43 Cal.2d 60, 65 [271 P.2d 23]; Rest.2d Torts (1965) § 315), but the courts have created limited exceptions based on various special relationships between a defendant and *either* the person whose conduct needs to be controlled or the foreseeable victim of that conduct. (Rest.2d Torts, *supra*, §§ 315-320.) Section 319 of Restatement Second Torts delineates a special relationship pertinent to the case at bar: "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

However, the duty created by section 319 is not necessarily one owed to the world at large; the element of foreseeability remains. The custodian must have knowledge of a specific risk to an identifiable and foreseeable victim. (See *Tarasoff* v. *Regents of University of California, supra*, 17 Cal.3d 425; *Hooks* v. *Southern Cal. Permanente Medical Group* (1980) 107 Cal.App.3d 435, 444 [165 Cal.Rptr. 741].)

We now proceed to apply these general principles to the facts at hand.

### Judgment on the Pleadings[1]

Plaintiffs allege that for a period of at least one year prior to the November 1, 1978, attack on the plaintiffs, Charles Stevens was an insane person who behaved in a hostile, belligerent and violent manner and had, on several occasions, "set upon, assaulted and beat up innocent persons." Defendants were at all times aware of these facts and agreed among themselves to assume control of his conduct in order to avoid his commitment in an institution. During his hospitalization in October 1978, Charles Stevens attacked an intern and threatened a nurse, as a

---

[1]A motion for judgment on the pleadings performs the same function as a general demurrer and is determined in the same manner. (*Colberg, Inc.* v. *State of California, ex rel. Dept. of Pub. Works* (1967) 67 Cal.2d 408, 411-412 [62 Cal.Rptr. 401, 432 P.2d 3].) Accordingly, all material facts pleaded in the complaint and those which reasonably arise by implication are deemed true. (See *Glaire* v. *La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357].)

result of which he was moved to the hospital's psychiatric ward. The defendants had full knowledge of this behavior and that Charles Stevens was a dangerous person; yet, 10 days after his admission to the hospital, sought Charles Stevens' release assuring hospital authorities that they would assume full responsibility over him and his conduct and would never leave him unattended. Had defendants not prevailed upon the hospital to release Charles Stevens to their custody, the hospital would have instituted commitment proceedings under the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq).

Defendants, as his wife and child who exercised complete control of his movements and conduct, were negligent in permitting Charles Stevens to roam the streets of Beverly Hills unattended on November 1, 1978, and in refusing to institute Lanterman-Petris-Short Act proceedings which would have resulted in a court determination that Charles Stevens was dangerous to the public and thereby in his commitment to an institution. The attacks on the plaintiffs were the proximate result of the foregoing negligence.

At first blush, it would appear that plaintiffs have sufficiently alleged a duty on the part of defendants to entitle them to relief. ■ However, only the material *facts* alleged in a complaint are deemed true; contentions, deductions or conclusions of fact or law alleged in the complaint, or *allegations contrary to facts of which a court may take judicial notice*, are not accorded similar treatment. (*Alva* v. *Cook* (1975) 49 Cal.App.3d 899, 903 [123 Cal.Rptr. 166].) ■ Plaintiffs have requested that we take judicial notice of Los Angeles Superior Court file No. A 078131 (People v. Charles Stevens) and MP 12702 (Conservatorship of Charles Stevens), and we now do so. The psychiatric reports contained in these files directly contradict the allegation that, prior to the attack on plaintiffs, defendants knew Charles Stevens to be a violent and insane man who had repeatedly assaulted innocent persons. The reports reveal that prior to his hospitalization, Charles Stevens' family had never known him to show any propensity for violence; rather, he was a very peaceful and nonviolent man (although senile). The reports further describe him as hard of hearing, exhibiting difficulty in ambulating, showing signs of disorientation, but cooperative; he became physically aggressive while at Cedars-Sinai Hospital when the staff *refused to allow him to leave*. Moreover, his attack on the plaintiffs was motivated by his belief that they (as his landlords) were stealing from him. Accordingly, there is nothing in the reports to suggest a violent history or generalized violent behavior or attitudes.

We note, further, that many of the allegations in the complaint are nothing more than legal or factual conclusions. The allegations that Cedars-Sinai Hospital would have instituted commitment proceedings but for defendants' assumption of responsibility over Charles Stevens, that defendants should have instituted such proceedings,[2] and that commitment proceedings would have been successful by determining that Charles Stevens was a danger to the public are all conclusory in nature. Absent the efficacy of the allegation that Charles Stevens had a history of violence, plaintiffs allege no probative or ultimate facts in support of the above conclusions.

Finally, the psychiatric reports of which we take judicial notice note that defendant Thea Stevens was, at the time, 83 years old and not capable of acting as Charles Stevens' conservator. This may contradict the allegation that she exercised complete control of his movements and conduct. However, assuming arguendo that the complaint sufficiently alleges that Thea Stevens had voluntarily "take[n] charge" of Charles Stevens (Rest.2d Torts, *supra*, § 319), we address the issue of whether she possessed knowledge of a foreseeable risk of harm to plaintiffs.

After removing all conclusory allegations and those contradicted by facts of which we take judicial notice, the following remains: Charles Stevens attacked an intern and threatened a nurse during his hospitalization at Cedars-Sinai Hospital. Thea Stevens knew of these events, yet sought his release and took him home. Our augmentation of these allegations by facts of which we take judicial notice provides the additional information that Charles Stevens became physically aggressive when the hospital staff refused to allow him to leave; he was senile and required assistance in caring for his basic needs.

The scope of the duty owed is measured by the foreseeability of the risk and whether the danger created is sufficiently large to embrace the specific harm. (*Palsgraf* v. *Long Island R. Co.* (1928) 248 N.Y. 339

---

[2]Defendants lack the legal authority to perform the duty which plaintiffs would thus impose on them. The power to detain a mentally disordered person dangerous to the public is vested in "a peace officer, member of the attending staff, ... or other professional person ..." (Welf. & Inst. Code, § 5150). Further, only "the professional person in charge of the facility, or his designee, ..." may petition the court for extended confinement. (Welf. & Inst. Code, § 5301.) The most defendants could have done was apply to the designated county official for a petition alleging Charles Stevens' danger to others and requesting evaluation (Welf. & Inst. Code, § 5201), a futile act in view of his presence for evaluation at Cedars-Sinai Hospital.

[162 N.E. 99, 59 A.L.R. 1253].) Defendant Thea Stevens' knowledge of Charles Stevens' one incident of aggressive behavior may have created a foreseeable risk that he might physically attack a person who attempted to keep him confined to a place other than home. The remaining issue is whether there was a foreseeable risk that he would attack, let alone stab, his landlords or his neighbors or any other person in the vicinity in the absence of an effort to prevent him from returning home. We think not. One incident of physical aggression while hospitalized (a stressful situation), precipitated by the staff insistence that he remain, hardly clothes Charles Stevens with a propensity for violence likely to be directed against plaintiffs. There being no foreseeable risk of harm to plaintiffs, defendant Thea Stevens owed them no duty of care. The judgment on the pleadings was properly granted.

*Summary Judgment*

■ Preliminarily, we note that the purpose of a motion for summary judgment is "to penetrate through evasive language and adept pleading and ascertain the existence or absence of triable issues. [Citations.]" (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) The court resolves the question of triable issues by examining "support[ing] or oppos[ing] ... affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice ... may be taken ... [which] set forth admissible evidence, ..." (Code Civ. Proc., § 437c.)

■ We limit our analysis of evidence presented on the motion for summary judgment to the question of custody and control inasmuch as that issue disposes of the matter. Defendant Charlotte Doland submitted the declaration of her attorney in which he quoted portions of her deposition and that of defendant Thea Stevens. Charlotte Doland testified that she had never, at any time five years prior to or including the date of the assault on plaintiffs, resided with or spent a single night in the home of her parents; she visited them relatively infrequently and, in fact, did not see her father, Charles Stevens, after his release from Cedars-Sinai Hospital. Moreover, her son, Michael Doland, had been appointed her father's conservator. Thea Stevens also testified that her daughter never spent the night in her parents' home. Plaintiff's submitted the declaration of their attorney in opposition to the motion, but submitted no facts in contradiction of Charlotte Doland's asserted physical absence from her father's home.

It is fundamental that in order to take charge of a person in such a manner as will create a duty to control his conduct, one must possess the *ability* to control that person's conduct. In discussing a parent's duty to control his minor child, *Poncher v. Brackett* (1966) 246 Cal. App.2d 769, 772 [55 Cal.Rptr. 59] noted: "The ability to control the child, rather than the relationship as such, is the basis for a finding of liability on the part of a parent. [Citation.] ... [T]he absence of such ability is fatal to a claim of legal responsibility." The ability to control is inferred from the relationship of parent to minor child, as it is from the relationship of custodian to charge; yet, it may be disproved by the circumstances surrounding a particular situation. Where, as in the instant case, the natural relationship between the parties (that of adult daughter and father) creates no inference of an ability to control,[3] the actual custodial ability must affirmatively appear.

The uncontroverted facts establish that Charlotte Doland occupied no position of legal authority over her father's person. In addition, it is clear that she lacked the opportunity to physically observe and exercise control over his conduct. Hence she lacked both the ability of control and the concomitant legal responsibility. There being no triable issues of material fact as to duty, summary judgment was properly granted.

The judgments are affirmed.

Hanson (Thaxton), J., and Devich, J.,* concurred.

A petition for a rehearing was denied September 30, 1981, and appellants' petition for a hearing by the Supreme Court was denied November 12, 1981.

---

[3]Plaintiffs attempt to establish the familial relationships in the instant case as independently special relationships which would create a duty of care, citing such special statutory duties as the duty of support. However, in each instance where the relationship relied on exists between the defendant and the *actor*, rather than the defendant and the *victim*, the inferred ability to control the actor's conduct is the common thread. (See, e.g., *Tarasoff* v. *Regents of University of California, supra*, 17 Cal.3d 425; *Hooks* v. *Southern Cal. Permanente Medical Group, supra*, 107 Cal.App.3d 435.)

*Assigned by the Chairperson of the Judicial Council.