[No. B046438. Second Dist., Div. Five. Aug. 7, 1990.]

ROSEMARY WISE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
GINGER M. MYERS et al., Real Parties in Interest.

COUNSEL

Spray, Gould & Bowers, Richard C. Turner and B. Eric Nelson for Petitioner.

No appearance for Respondent.

Hobart, Heeringa & Yardley and David R. Yardley for Real Parties in Interest.

OPINION

**BOREN, J.**—On or about September 21, 1988, petitioner's deceased husband, John Southey Wise (decedent), mounted a sniper attack from the roof of his home, severely injuring a number of passing motorists, including plaintiffs, before taking his own life. The issue in this proceeding is whether plaintiffs may state causes of action for negligence and negligent entrustment based upon petitioner's failure to prevent the attack. We hold that plaintiffs cannot state a cause of action on either theory, and the respondent court erred in overruling petitioner's demurrer to plaintiffs' first amended complaint.

## FACTS

Ginger M. Myers and David Luchetti (plaintiffs) filed this action against petitioner (individually and in her capacity as executor of decedent's estate) and her sister, Michelle Gendreau, owner of the home in which petitioner and decedent resided.[1] The allegations of plaintiffs' first amended complaint, which, for purposes of a demurrer, we assume to be true (*Rose* v. *County of Plumas* (1984) 152 Cal.App.3d 999, 1002, fn. 2 [199 Cal.Rptr. 842]), are

---

[1] Gendreau is not a party to this petition.

that decedent was a "human time bomb" with a history of erratic and violent behavior prompted in part by his abuse of drugs and alcohol. More specifically, plaintiffs allege that decedent had (and we quote verbatim from the first amended complaint): "(1) a long history of arrests since 1965 including drug possession, robbery and burglary, and a conviction for grand theft and possession of dangerous drugs; (2) a long history of alcoholism and heavy drug use including heroin, LSD, cocaine, barbiturates, amphetamines and marijuana; (3) a long history of psychiatric treatment for depression, aggressive behavior and criminal conduct; (4) a collection of wild and dangerous animals at defendants' residence including a boa constrictor and alligators and raised rabbits to feed these animals; (5) been unemployed for long periods of time including a lengthy time prior to and on September 21, 1988; (6) been observed romping naked in defendants' backyard with his two small pet alligators in 1987, and reported to police and defendants by neighbors; (7) access to and possession of an arsenal of weapons at defendants' residence including at least eight (8) pistols, four (4) rifles including an assault rifle, two (2) shotguns, one (1) machine gun and ample ammunition for all of them. . ."

Shortly before his sniper attack, decedent threatened to shoot a neighborhood cat which had killed one of his rabbits. Decedent's increasingly unstable and antisocial behavior prompted petitioner to leave the family home at least one week prior to the attack.

Plaintiffs contend petitioner was negligent in that she "permitted decedent to occupy the house with knowledge that he was a human time bomb, provided him access to the means to commit his rampage, set him off by leaving him alone and unsupervised, but did nothing to protect or warn others within the zone of danger thus created." They claim the attack might have been prevented had petitioner removed the weapons from decedent's possession or controlled his access to them[2] maintained contact with decedent to determine whether he posed a serious threat to himself, members of the neighborhood, and/or "proximate members of the motoring public"; notified local authorities about decedent's behavior, or initiated a 72-hour psychiatric hold and observation under Welfare and Institutions Code section 5000 et seq.; and/or evicted decedent from the property.

As plaintiffs themselves recognize, the crucial issue is whether petitioner had a legal duty to protect plaintiffs from harm. The first amended complaint does not set forth facts which give rise to such a legal duty, based on either general negligence principles or on the existence of a special relationship.

---

[2] Plaintiffs also allege that petitioner, who they claim owned a community property interest in the weapons, negligently entrusted them to decedent.

## DISCUSSION

■ The complaint in an action for damages for negligent injury to person or property must allege (1) defendant's legal duty of care toward plaintiff, (2) defendant's breach of duty (the negligent act or omission), (3) injury to plaintiff as a result of the breach (proximate or legal cause); and (4) damage to plaintiff. (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 527, p. 558.)

"Although the legal conclusion that 'a duty' exists is neither necessary nor proper in a complaint, facts which cause it to arise (or from which it is 'inferred') are essential to the cause of action." (4 Witkin, *op. cit. supra*, at § 531, p. 565.) A complaint which lacks facts to show that a duty of care was owed is fatally defective. (*Peter W.* v. *San Francisco Unified School Dist.* (1976) 60 Cal.App.3d 814, 821 [131 Cal.Rptr. 854].)

Even if all of the facts set forth in the first amended complaint are true, there is no relationship between petitioner and decedent, or petitioner and plaintiffs, which creates any legal obligation on the part of petitioner to plaintiffs.

1. *Petitioner did not have the requisite "special relationship" to either decedent or plaintiffs.*

The substance of plaintiffs' claim is that petitioner failed to control decedent's conduct. ■ In general, one owes no duty to control the conduct of a third person to prevent him from causing physical harm to another, absent a special relationship between the defendant and either the person whose conduct needs to be controlled or the foreseeable victim of that conduct. (*Richards* v. *Stanley* (1954) 43 Cal.2d 60, 65 [271 P.2d 23]; *Megeff* v. *Doland* (1981) 123 Cal.App.3d 251, 257 [176 Cal.Rptr. 467]; Rest. 2d Torts, § 315.)

The first category, special relationships between the defendant and the person whose conduct needs to be controlled, includes the relationships between parent and child (Rest. 2d Torts, *supra*, § 316), master and servant (*Id.*, § 317), the possessor of land or chattels (who has a duty to control the conduct of a licensee) (*Id.*, § 318), and "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled . . . ." (*Id.*, § 319) In all of the above relationships, the *ability* to control the third party is essential. " '[T]he absence of such ability is fatal to a claim of legal responsibility' . . . . Where, as in the instant case, the natural relationship between the parties . . . creates no inference of an ability to control, the actual custodial ability must

affirmatively appear." (*Megeff* v. *Doland, supra,* 123 Cal.App.3d at p. 261; see also Rest. 2d Torts, *supra,* § 318, subd. (a).)

█ Plaintiffs assert that petitioner assumed responsibility for decedent and that he was "dependent upon petitioner's supervision and control." The first amended complaint is replete with facts which belie plaintiffs' claim. It is petitioner's *lack* of control which is apparent, and in fact the picture painted by the first amended complaint is of an individual whose behavior was beyond the control of anyone, including himself.

Likewise, plaintiffs cannot allege a special relationship between themselves and petitioner because in this case neither the injury nor the harm was foreseeable. █ "As explained by Justice Cardozo, negligence is a matter of relation between the parties, and must be founded upon the foreseeability of harm to the person in fact injured." (*Brady* v. *Hopper* (D.Colo. 1983) 570 F.Supp. 1333, 1339, citing *Palsgraf* v. *Long Island R. Co.* (1928) 248 N.Y. 339 [162 N.E. 99, 101].) █ Despite decedent's bizarre behavior, his only violent threat was directed at a neighborhood cat which had killed one of his rabbits. Even if we assume, for the sake of argument, that petitioner was aware of decedent's potential for violence, plaintiffs have not alleged any facts which suggest petitioner knew or could have known that decedent would engage in the type of attack which occurred here.[3]

2. *The standards of ordinary care are inapplicable.*

█ Alternatively, plaintiffs contend that they do not need to plead a "special relationship" because that principle has no application where the defendant, through his or her own action, has made the plaintiff's position worse and has created a foreseeable risk of harm from the third person. In such cases, the question of duty is governed by the standards of ordinary care. (*Pamela L.* v. *Farmer* (1980) 112 Cal.App.3d 206, 209 [169 Cal.Rptr. 282].) In *Pamela L.,* the defendant, who allegedly knew of her husband's history of child molestation, nonetheless encouraged and invited plaintiffs (several young girls) to use the swimming pool at her house while she was at work and her husband was at home. We reversed the judgment of dismissal entered after defendant successfully demurred to plaintiffs' complaint.

*Pamela L.* is easily distinguishable, since both the victims (young children) and the harm (sexual assault) were foreseeable. "According to the allegations, plaintiffs were expressly invited by respondent. The burden on

---

[3] Plaintiffs do not say how petitioner should have gone about warning "proximate members of the motoring public."

respondent to avoid the harm was slight; she could have suggested simply that she did not want plaintiffs to come over to swim while respondent was not home. Although Richard's primary responsibility for the harm is obvious, nevertheless there is a fairly close connection between respondent's invitation and the ultimate harm. There is moral culpability for respondent's conduct which increased the risk of harm. The victims were children entitled to more stringent precautions than necessary for an adult." (112 Cal.App.3d at p. 211.)

### 3. *Plaintiffs cannot state a cause of action for negligent entrustment.*

■ Plaintiffs' claim based upon petitioner's alleged negligent entrustment of the weapons to decedent must likewise fail. Certainly no facts have been shown which would prove petitioner actually entrusted decedent with the weapons which he used to inflict the injuries. Nor do we believe that petitioner's possible co-ownership of the weapons arising from community property principles permits us to apply a theory of *constructive* negligent entrustment. In *Mettelka* v. *Superior Court* (1985) 173 Cal.App.3d 1245 [219 Cal.Rptr. 697], cited by plaintiffs, the co-owner of the automobile—there, the instrumentality of the injury—was also the father of the tortfeasor. He, of course, was clothed with the usual responsibilities of parental control, but, more significantly, it was alleged that the father had negligently " 'aided, assisted, and facilitated' " his son's acquisition and use of the vehicle. Similar facts are not evident in the instant case, and we do not find that a negligent entrustment theory should or can be applied here.

### CONCLUSION

■ Citing the trend to "expand the list of special relationships which justify imposing liability," (*Pamela L., supra,* 112 Cal.App.3d at p. 211) plaintiffs offer several public policy reasons why liability should be imposed upon petitioner here: the benefit to the community of reducing "the risk that citizens will encourage mentally ill family members to repeat this all too familiar type of mass shooting-suicide incident,"[4] and the fact that plaintiffs' extensive medical bills will be paid from their damages recovery, "not borne by County and State assistance programs funded through tax dollars." Plaintiffs also cite the ready availability of homeowners' insurance.

In our view, there are as well public policy reasons for limiting the scope of petitioner's liability here. Chief among these is our belief that the responsibility for tortious acts should lie with the individual who commits those

[4] We find particularly offensive plaintiffs' suggestion that petitioner "encouraged" decedent's attack.

acts; absent facts which clearly give rise to a legal duty, that responsibility should not be shifted to a third party. We sympathize with plaintiffs' misfortune. This is a tragic case in which blameless victims have suffered life-threatening and permanent injuries. The issue before us, however, is whether petitioner must assume the blame for these injuries. Under long-established legal authority, the answer is no.

### DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order of September 29, 1989, overruling the demurrer of defendant Rosemary Wise to plaintiffs' first amended complaint, and enter a new and different order sustaining the demurrer without leave to amend, in that action entitled Ginger M. Myers et al. v. John Southey Wise, Jr., Deceased et al., Los Angeles Superior Court No. WEC 135885.

Ashby, Acting P. J., and Turner, J., concurred.