DECISION
On July 3, 1994, Ronald Volpe was shot to death by James Andrew Gallagher, his next door neighbor. Gallagher subsequently pled guilty and is currently incarcerated at the Adult Correctional Institution.
Gallagher, 34 years old at the time of the shooting, is the son of the defendant, Sara Gallagher, and had lived in the home virtually his entire life. The Gallaghers lived next door to Joyce Almonte, the decedent's sister with whom he lived.
On July 10, 1997, the heirs of Ronald Volpe filed a multiple count complaint against Sarah Gallagher alleging (1) negligent entrustment, (2) negligent supervision, (3) failure to warn, (4) breach of duty to control and supervise, and (5) landowner liability. On July 11, 2000, a jury returned a verdict against the defendant, Sarah Gallagher, and awarded the heirs of Ronald Volpe a total of $172,263.01 with interest.
The defendant moves for judgment as a matter of law pursuant to Rule 50(b) of the Superior Court Rules of Civil Procedure. The defendant contends that there was no evidence that she knew or should have known that weapons and ammunition were being stored in her home. The defendant also argues that there is no evidence that James Gallagher had any history of violence that would have made his actions foreseeable to the defendant. Moreover, the defendant contends that caselaw supports her argument that parents are not responsible for the intentional torts of their adult children, even if those children are living in the parent's home.
The plaintiff argues that defendant's motion for judgment as a matter of law is procedurally improper. The plaintiff notes that because the court already ruled on and denied the defendant's 50(b) motion, it should not be granted, and if it is considered, should be treated as a Motion for Reconsideration.
In the alternative, the defendant moves for a new trial pursuant to Rule 59 of the Superior Court Rules of Civil Procedure. The defendant argues that the verdict is contrary to the facts, to the fair preponderance of the evidence presented at trial, and to the law given to the jury by the court during the jury charge. The defendant contends that the verdict fails to administer substantial justice between the parties and to respond to the merits of the case. Finally, the defendant argues that the verdict is the result of an error of law and is based on sympathy and emotion. The plaintiff argues that the verdict of the jury achieved substantial justice between the parties and should be allowed to stand.
On July 10, 2000, the defendant moved for judgment as a matter of law at the close of the plaintiff's case. The Court reserved judgment on the motion. Said motion was renewed after the defendant rested at the close of the evidence. On July 11, 2000, after the jury returned its verdict, this Court denied the defendant's motion for judgment as a matter of law. However, on July 20, 2000, the defendant once again moved for judgment as a matter of law.
 Motion for Judgment As a Matter of Law
Pursuant to Rule 50(a) of the Superior Court Rules of Civil Procedure, "If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue."
A motion for a judgment as a matter of law may be made at any time before submission of the case to the jury. SUPER. R. CIV. P. 50(a). Whenever a motion for judgment as a matter of law, made at the close of all evidence, is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. SUPER. R. CIV. P. 50(b). Such a motion may be renewed by service and filing not later than ten (10) days after the entry of judgment. A motion for a new trial pursuant to Rule 59 may be joined with a renewal motion for a judgment as a matter of law or a new trial may be requested in the alternative. Id. If a verdict was returned, then the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law. Id.
This Court previously reserved judgment on defendant's motion for judgment as a matter of law, submitting the case to the jury subject to this Court's later determination. After the jury returned its verdict, the Court ruled on defendant's judgment as a matter of law and denied the motion. Subsequent to the Court's ruling, defendant once again moved for judgment as a matter of law. Accordingly, this Court will treat defendant's instant motion as one for reconsideration.
However, the Rhode Island Rules of Civil Procedure, like the Federal Rules of Civil Procedure, generally do not recognize or provide for a Motion for Reconsideration. See generally, Hatfield v. Bd. of Cty. Com'rs for Converse Cty., 52 F.3d 858 (10th Cir. 1995) (citations omitted). Our Supreme Court in noting its goverance by the "liberal rules" of civil procedure, has "look[ed] to substance not labels." Sarni v. Melocarro,113 R.I. 630, 636, 324 A.2d 648, 651-2 (R.I. 1974). Consequently, "[a] motion can be construed as made under Rule 60(b) even if it is styled `Motion to Reconsider. . . .'" James Wm. Moore et. al., Moore's Federal Practice 1997 Rules Pamphlet ¶ 60.2 [9] (1996). With respect to vacating final judgments, the mistakes encompassed by R.C.P. 60(b)(1) do not include judicial errors of law. See Jackson v. Medical Coaches,734 A.2d 502, 507 (R.I. 1999). Rule 60(b)(1) is also "not available to allow a party merely to reargue an issue previously addressed by the court." Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996). Thus, Rule 60(b) does not authorize
 "`a motion merely for reconsideration of a legal issue . . . where the motion is nothing more than a request that the [trial] court change its mind. . . .'" Jackson, 734 A.2d at 508 n. 8 (citing United States v. Williams, 674, F.2d 310, 312-13 (4th Cir. 1982)). This Court further finds that defendant's instant motion for reconsideration precludes this Court's consideration under R.C.P. 60 (b)(6), as well. Not intended to serve as a "catchall" for any reason justifying vacation of a judgment, utilization of subsection 6 of Rule 60(b) requires "extraordinary circumstances" for its invocation. 11 Wright 
Miller, Federal
Practice and Procedure: Civil § 2864 at 35 (1998); see also Richardson v. Smith, 691 A.2d 543, 546 (R.I. 1997). Accordingly, this Court declines to rule on defendant's instant motion for judgment as a matter of law, which it treats here as a motion for reconsideration.
 Motion for New Trial
Rule 59(a)(1) of the Superior Court Rules of Civil Procedure provides that a new trial may be granted,
 "[I]n actions in which there has been a trial by jury for error of law occurring at the trial or for any other reasons for which new trials have heretofore been granted in actions at law in the courts of this state."
When considering a motion for new trial based upon an allegation that the verdict is contrary to the evidence and the weight thereof, "a trial justice sits as the super juror and is required to independently weigh, evaluate and assess the credibility of the trial witnesses and evidence. If the trial justice determines that the evidence is evenly balanced or is such that reasonable minds, in considering the same evidence, could come to different conclusions, then the trial justice should allow the verdict to stand." Morrocco v. Piccardi, 713 A.2d 250, 253 (R.I. 1998) (citing Barbato v. Epstein, 97 R.I. 191, 193-94,196 A.2d 836, 837 (1964)). "If, however, the trial justice finds that the jury's verdict is against the fair preponderance of the evidence and fails to do substantial justice, he or she must grant the motion for a new trial." Reccko v. Criss Cadillac Co., Inc., 610 A.2d 542, 545 (R.I. 1992) (citing Sarkisian v. NewPaper, Inc., 512 A.2d 831, 836 (R.I. 1986)). "Although the trial justice need not perform an exhaustive analysis of the evidence, he or she should refer with some specificity to the facts which prompted him or her to make the decision so that the reviewing court can determine whether error was committed." Id. (citing Zarrella v. Robinson, 460 A.2d 415, 418 (R.I. 1983)). Conclusions of the trial justice on a motion for a new trial should not be substituted for those of the jury, and the jury verdict should not be disturbed merely because the trial justice would have made a contrary finding on the same evidence. Turgeon v. Davis, 120 R.I. 586, 590, 388 A.2d 1172, 1174 (1978).
Where the motion for a new trial is predicated upon the grounds that the verdict is contrary to the law, the only question presented is whether or not the jury accepted and followed the law as given to it by the trial justice in his or her charge. Sneddon v. Costa, 117 R.I. 624, 627, 369 A.2d 643, 645 (1977). On such allegation, the verdict should be set aside if it "is contrary to the law as given by the trial justice to the jury." Blume v. Shepard Co., 108 R.I. 683, 690, 278 A.2d 848, 852 (1971).
Rule 59 of the Superior Court Rules of Civil Procedure, as amended September 5, 1995, permits alleged errors of law committed by the trial justice in a case tried before a jury to be raised in a motion for new trial. Amica Mutual Insurance Co. v. Tashjian, 703 A.2d 93, 97 (R.I. 1997).
According to our Supreme Court, the 1995 amendment to Rule 59 "significantly expanded the traditional grounds for the grant of a new trial and served to conform our rule to its federal counterpart."
Votolato v. Merandi, 747 A.2d 455, 460 (R.I. 2000). The rule assumes that "[a]ny error of law, if prejudicial, is a good ground for a new trial." Id. (citing 11 Wright Miller, Federal Practice and Procedure: Civil 2d § 2805 at 55 (1995)). As such, an error of law constitutes an abuse of the trial justice's discretion. See id.
The defendant requests a new trial in light of the verdict entered by the jury in this matter. The defendant contends that this Court made an error of law by upholding a jury verdict that found the defendant liable under a theory of landowner liability for the shooting death of Ronald Volpe. The defendant asserts that at common law and under Restatement (Second) Torts § 318, she had no duty to control the actions of James Gallagher. The defendant relies on the holding of the Supreme Judicial Court of Massachusetts in Andrade v. Baptiste, 583 N.E.2d 837 (Ma. 1992). In Andrade, the court found that although the wife had knowledge of the husband's storage of guns and ammunition in the home she was not liable for the shooting death of the plaintiff. See id. The plaintiffs claim that the defendant's reliance on Andrade is misplaced and inapplicable. The plaintiffs argue that Andrade is not controlling here and that the court's analysis of the case failed to address the ability of the wife to control the use of the property but focused more on the wife's ability to control the use of the firearm.
Whether a legal duty exists relative to landowner liability is a question of law to be decided by the court. D'Ambra v. United States,114 R.I. 643, 649 (1975). In general, one owes no duty to control the conduct of a third person to prevent him from causing physical harm to another unless there exists a special relationship. Joseph A. Page, The Law of Premises Liability, Andersen Publishing Co., § 11.2 at 292 (2nd ed. 1988); see also Wise v. The Superior Court of Los Angeles Cy., et al., 222 Cal.App.3d 1008, 1013 (1990). A special relationship may include those between a parent and a child, a master and servant, an employer and employee and a possessor of land or chattel and the person allowed to use the land or chattel. See id. Such relationships do not trigger an automatic duty.
Rather, for a duty to exist, the defendant must have the ability to control the conduct of the third person and be reasonably aware of the opportunity and the need for such control. D'Amico v. Christie, et al.,518 N.E.2d 896, 900 (1987).
The Restatement (Second) Torts § 318 "recognizes the peculiar ability of an owner to control either land or chattel which a third party knows can only be used with the owner's permission." Chavez v. Torres,991 P.2d 1, 5 (N.M.App. Ct. 1999). As such, a special relationship is created. Section 318 provides that
 "If an actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of third persons as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them. This duty may attach if the landowner
(1) has reason to know that he has the ability to control the third person, and
 (2) knows or should know the necessity and opportunity for exercising such control."
Under the first prong of § 318, a landowner has a duty to exercise reasonable care if he or she has the ability to control the conduct of the third person. The fact that a third person uses land only by virtue of the owner's permission, gives that landowner the peculiar ability to control the manner in which the land is used. 1 Restatement (Second) of Torts § 318(a) cmt. a (1966). Likewise, a landowner's occupation of a premise gives him or her control over those allowed to enter and the power of expulsion. Chavez, 991 P.2d at 5. Thus, a landowner can be held liable if he permits others on his land to shoot at neighbors or passing motorists. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 57 at 392 (5th ed. 1984).
In the instant case, a special relationship existed between the defendant and the assailant, James Gallagher. Mr. Gallagher is the adult son of the defendant and resided in her home. The defendant testified that had she known that guns were being stored on her property, she would have stopped the activity. The Court finds that the defendant had the ability to control the conduct of James Gallagher.
Once the ability to control is demonstrated then under the second prong of § 318, a duty to control attaches only if the landowner knew or should have known of the necessity of, and opportunity for, exercising control. Therefore, if a landowner knows of certain propensities of a third person or the presence of a threat and fails to exercise control then he or she is liable to the person injured. The Law of Premises Liability, § 11.6 at 297; see also Chavez, 991 P.2d 1 (the fact that the defendant knew that her son had an alcohol problem and that he demonstrated a violent and intemperate behavior enabled the jury to reasonably conclude that the defendant knew or should have known the necessity of, and opportunity for, exercising control); compare McDonald v. Lavery, 534 N.E.2d 1190 (Mass. App. Ct. 1989) (defendants were not liable where there was no evidence that the defendants knew or should have known about their son's propensity for using firearms in a violent manner). The test is one of foreseeability. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 57 at 392 (5th ed. 1984).
This instant matter is one first impression in Rhode Island. Whether the defendant is negligent is dependent on whether it was reasonably foreseeable that the defendant's son would use the weapons stored in the home in a violent and threatening manner. James Gallagher suffered from a long term mental illness. The defendant and her daughters testified that Mr. Gallagher had refused to seek psychiatric care, refused to take medicine to control his illness, and experienced hallucinations. The plaintiffs argue that the defendant should have been cognizant of the unreasonable risk created by her son's mental illness combined with access to guns and ammunition stored in her home.
However, in Wise v. The Superior Court of Los Angeles, the California Court of Appeals held that the petitioner was not liable for her deceased husband's sniper attack from the roof of their home. 222 Cal.App.3d 1008, 1011 (Cal.Ct.App. 1990). At the time of the assault, the deceased lived in a home owned by the petitioner's sister. See id. The deceased was considered a "human time bomb" and had a history of erratic and violent behavior. See id at 1012. He was a known drug abuser and alcoholic with a long history of arrests and psychiatric treatment. See id. The plaintiffs sued the petitioner and her sister claiming that they had knowledge of the deceased's propensity for violence and thus had a duty to control his conduct and prevent harm to others. In addition, the plaintiffs contend that the petitioner and her sister were negligent in allowing the deceased to store guns and ammunition in the home. See id. The court held that the petitioner did not have a legal duty to control the conduct of the deceased. The court noted that there were public policy reasons to limiting liability. See id. at 1015.
Specifically, the court concluded that the responsibility for tortious acts should lie with the individual committing the acts and absent facts which clearly give rise to a legal duty the responsibility should not shift to a third party. See id. at 1016 (emphasis added).
Similarly, in McDonald v. Lavery, the court held that the defendants were not liable for the actions of their adult son, when he shot and injured a visitor in their home. 534 N.E.2d 1190, 1192 (Mass. App. Ct. 1989). At the time of the assault, the assailant lived with his parents, was self-supporting and was an alcoholic. See id. at 1191. The defendants were aware of their son's disease, and knew that he had been arrested several times and could be violent when intoxicated. See id. The plaintiff sued the defendants claiming that they had knowledge of their son's propensity for violence when intoxicated and thus had a duty to control their son's conduct. See id. Moreover, the plaintiff claimed that defendants were negligent in allowing their son to keep and store guns and ammunition in the home. See id. The court concluded that the fact that the assailant lived with his parents did not impose on them a duty to control his actions. See id. at 1192. The court reasoned that prior to the instant incident there was no evidence that the parents knew or should have known that their son had a propensity for using firearms in a threatening or violent manner. See id.
In the instant case, no evidence was ever presented that the defendant knew or should have known that her son would use a firearm in a violent manner. In fact, James Gallagher had never exhibited any violent propensities. Assuming, arguendo, that the defendant knew about the storage of guns and ammunition in her home, there are insufficient facts to suggest that the defendant knew or should have known that her son would engage in the type of attack that occurred. Consequently, under the principles set forth in § 318, no duty to control existed. As such, the defendant did not owe a duty to Ronald Volpe to control the actions of James Gallagher.
After reviewing the evidence before it and its charge to the jury, this Court finds a new trial is warranted for error of law. Accordingly, the defendant's motion for new trial is granted.
Counsel shall submit an entry of judgment in accordance with the above decision.