Filed 3/17/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ANNET HERNANDEZ,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>MARIA JENSEN,<br><br>      Defendant and Appellant. | B294449 (consolidated with B296958)<br><br>(Los Angeles County<br>Super. Ct. No. BC633443) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Chester Horn, Jr., Judge.  Affirmed.
        Michael Maguire & Associates, Paul Kevin Wood and Kathryn Saldana for Defendant and Appellant.
        Law Offices of Frank J. Valdez and Frank J. Valdez; The Ehrlich Law Firm and Jeffrey I. Ehrlich for Plaintiff and Respondent.

———————————————

# INTRODUCTION

Maria Jensen and her family hired two healthcare aides to work in their elderly parents' home.  While one of the aides bathed Jensen's mother in a hospital bed in her bedroom, the second aide reached into the bedroom closet to retrieve an oxygen tank for Jensen's father.  The removal of the tank caused a loaded rifle in the closet to fall and discharge, striking the other aide and injuring her.

A jury found Jensen liable for negligence.  Jensen appeals, arguing she did not owe the injured aide a duty of care and she did not cause the aide's harm.  Jensen also argues the trial court incorrectly instructed the jury on general negligence and the verdict form reflected that error.

California law establishes the general duty of each person to exercise reasonable care for the safety of others.  We decline to recognize an exception to this fundamental principle for employers and supervisors of healthcare aides working in homes where firearms are present.  It is foreseeable that an accidental shooting might occur in a home containing unsecured, loaded firearms, and policy considerations favor a duty to use reasonable care when one knows firearms are present.  We accordingly hold that Jensen owed the aide a duty of care.  We further hold that substantial evidence supports the jury's finding that Jensen's negligence was a substantial factor in causing the aide's harm, and we find no error in the jury instructions.  We affirm.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *Jensen and Her Family Hire Home Healthcare Aides To Care for Their Parents*

Maria Jensen is the adult daughter of Josefina and Fernando Corona.[1]  At the time of the events in this case, Josefina and Fernando were 87 years old.  Josefina was bedridden, and Fernando had limited mobility and impaired hearing.  Josefina and Fernando owned a home in the City of Commerce where the shooting occurred.  Jensen lived in Santa Maria, California and visited her parents at least monthly, staying for a weekend or sometimes a week at a time.

In 2012, Jensen and her family learned that Josefina had dementia.  Beginning in December 2013, Gerinet, Inc. provided hospice care for Josefina.  Annet Hernandez worked for Gerinet as a home healthcare aide.

Jensen completed and signed the paperwork hiring Gerinet to provide home healthcare services for Josefina.  Jensen identified herself as a primary caregiver for her mother.  At the time Jensen hired Gerinet, Fernando could not care for Josefina or their home.

When Jensen hired Gerinet, she did not discuss safety with the Gerinet representative.  The intake forms Jensen signed stated that the hiring party would "provide a safe home environment in which care can be given."  During an intake meeting with a Gerinet representative, Jensen showed the representative the rooms to which the Gerinet staff would have

---

[1]   For clarity, we refer to Josefina and Fernando Corona and to Jensen's siblings by their first names.

access, i.e., the kitchen, her parents' bedroom, the den, and the shower room.

In March 2014 the family hired a second home healthcare worker, Tanya Duran, to provide care for Josefina, perform light housekeeping, and cook for Josefina and Fernando. Jensen told Duran her duties and that Jensen was "in charge of her parents and everything that was in the house." Jensen set Duran's hours and supervised Duran and her work.

Because there had been break-ins at the house, Jensen's husband installed surveillance cameras. Jensen used the cameras to monitor her parents when she was not there. Jensen also used the cameras to supervise Duran's work.

B.    *A Rifle in a Bedroom Closet Discharges, and Hernandez Is Shot*

On February 16, 2015 Duran and Hernandez were at work at Josefina and Fernando's home. Jensen was not in Commerce that day. Fernando told Duran he was short of breath, and Duran went to Josefina and Fernando's bedroom to retrieve an oxygen tank for him. When Duran entered the bedroom, Hernandez was bathing Josefina in the bedroom. Duran opened a sliding closet door and reached into the closet to retrieve an oxygen tank. The removal of the tank caused a loaded rifle in the closet to fall and discharge.

Duran saw a flash of light and heard a sound "like a firecracker" or a "pop." Hernandez told Duran "something hit me," and they realized Hernandez had been shot. Hernandez fell to her knees, and Duran called 911. Hernandez suffered serious injuries, including a fractured pelvis and a perforated intestine.

The police confiscated the rifle, a BB gun, and a loaded handgun from Josefina and Fernando's bedroom. After

4

paramedics and police arrived, Duran telephoned Jensen to tell her what had occurred. Jensen asked Duran: "What the fuck are you doing in the closet?" Jensen did not ask about Hernandez's condition. Jensen testified she was "pissed" and "mad" about the shooting. The police determined the shooting was accidental.

C. *Jensen and Her Siblings Knew Fernando Kept Firearms in the House*

Before the shooting, Jensen knew her father had handguns and rifles in the house, including a handgun and a BB gun in his nightstand. Jensen also knew her father had kept handguns and rifles at a prior residence. Jensen testified that Fernando was "a little crazy when it came to guns."

Jensen had not seen the rifle involved in the shooting and did not know it was in the bedroom closet. Jensen's husband knew Fernando had guns in the house because he had unloaded two of them. Jensen's sister Irma knew Fernando had guns in the house, including a handgun in the bedroom nightstand. Irma had not seen the rifle involved in the shooting and did not know how it came to be in the closet. Jensen's brother John had seen a rifle in the bedroom closet but did not tell Duran it was there. John did not tell Jensen or Irma about the rifle either. Fernando did not have a gun safe in the house.

Following the shooting, Gerinet informed the family that all guns must be removed from the house before Gerinet personnel could continue working in the house. Jensen was present by telephone for that conversation. After the conversation with Gerinet, and within two weeks after the shooting, Duran found two more rifles at the other end of the same bedroom closet.

D.   *The Jury Finds Jensen, John, and Fernando Liable for Negligence*

Hernandez sued Jensen, John, and Fernando, as well as Josefina's estate, Josefina as trustee of a family trust, and Jensen's other two siblings. The jury found Jensen, John, and Fernando liable for general negligence and awarded total damages of $3.61 million. The jury apportioned fault 65 percent to Jensen, 20 percent to John, and 15 percent to Fernando. The trial court entered judgment on the jury's verdict on September 12, 2018. The court subsequently reduced the economic damages award from $610,000 to $406,644.77 and left the $3 million non-economic damages award intact. Jensen timely appealed.

**DISCUSSION**

A.   *Standards of Review*

Hernandez alleged causes of action for general negligence and premises liability. Jensen argues she did not owe Hernandez a duty of care and she did not cause Hernandez's harm.

The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury. (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158 (*Kesner*).) Duty is a question of law for the court, to be reviewed de novo on appeal. (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770 (*Cabral*).)

The elements of breach of duty and causation are ordinarily questions of fact for the jury's determination. (*Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 278 (*Vasquez*).) "Where findings of fact are challenged on appeal, we are bound by the 'elementary, but often overlooked principle of law, that . . . the power of the appellate court begins and ends

6

with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the findings below." (*Garbell v. Conejo Hardwoods, Inc.* (2011) 193 Cal.App.4th 1563, 1569 (*Garbell*), quoting *Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429; *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) The substantial evidence standard of review applies to the jury's findings on causation. (*Cabral*, *supra*, 51 Cal.4th at p. 770.)

Jensen also argues the trial court erred by failing to instruct the jury that ownership, maintenance, or control of the premises was a prerequisite to finding Jensen liable for general negligence. The propriety of jury instructions is a question of law that we review de novo. (*Alamo v. Practice Management Information Corp.* (2013) 219 Cal.App.4th 466, 475.)

B.      *Jensen Owed Hernandez a Duty of Care*

1.      *The duty of care*

Pursuant to Civil Code[2] section 1714, subdivision (a), "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." (§ 1714, subd. (a).) "California law establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others." (*Cabral*, *supra*, 51 Cal.4th at p. 768.) "In the absence of a statutory provision establishing an exception to the general rule of Civil Code section

---

[2]      All further statutory references are to the Civil Code.

7

1714, courts should create one only where 'clearly supported by public policy.'" (*Id*. at p. 771, quoting *Rowland v. Christian* (1968) 69 Cal.2d 108, 112 (*Rowland*).)

"In the *Rowland* decision, th[e] court identified several considerations that, when balanced together, may justify a departure from the fundamental principle embodied in Civil Code section 1714: 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.'" (*Cabral, supra*, 51 Cal.4th at p. 771.)

The Supreme Court has explained that "[t]he *Rowland* factors fall into two categories. Three factors—foreseeability, certainty, and the connection between the plaintiff and the defendant—address the foreseeability of the relevant injury, while the other four—moral blame, preventing future harm, burden, and availability of insurance—take into account public policy concerns that might support excluding certain kinds of plaintiffs or injuries from relief." (*Kesner, supra*, 1 Cal.5th at p. 1145.)

### 2.     *Foreseeability factors*

"The most important factor to consider in determining whether to create an exception to the general duty to exercise ordinary care articulated by section 1714 is whether the injury in question was foreseeable." (*Kesner, supra*, 1 Cal.5th at p. 1145.) For purposes of duty analysis, "'foreseeability is not to be

8

measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.' . . . [I]t is settled that what is required to be foreseeable is the general character of the event or harm— e.g., being struck by a car while standing in a phone booth—not its precise nature or manner of occurrence." (*Ibid.*)

It is foreseeable that a home healthcare worker might accidentally be shot in a home containing unsecured, loaded firearms. Accidental shootings in residences are a sad reality of modern life. In light of this known risk, a reasonably thoughtful person employing a healthcare aide in a home containing guns would consider the possibility that a gun could be discovered and accidentally discharged. Jensen described her father as "a little crazy when it came to guns" and knew her father had handguns and rifles in the house, including a handgun in his nightstand. Jensen's argument that she did not know the specific rifle involved in the shooting was in the closet misconstrues the foreseeability analysis. "[I]t is settled that what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence." (*Kesner, supra*, 1 Cal.5th at p. 1145.) The general character of the event or harm here is the likelihood that an unsecured gun in a home could accidentally discharge and cause injury. Unfortunately, that occurrence is more than "'likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.'" (*Ibid.*)

Jensen's argument that she did not owe Hernandez a duty of care because "the presence of guns in the house would not have made it foreseeable to [Jensen] that either 1) a gun would be

9

found in a closet, or 2) this gun would be kept loaded" overlooks that "the *Rowland* factors are evaluated at a relatively broad level of factual generality." (*Cabral*, *supra*, 51 Cal.4th at p. 772.) Thus, as to foreseeability, "the court's task in determining duty 'is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed . . . .'" (*Ibid.*, original italics.)  The first foreseeability factor weighs against finding an exception to the duty to exercise reasonable care for the safety of others.[3]

"The second *Rowland* factor, the degree of certainty that the plaintiff suffered injury, 'has been noted primarily, if not exclusively, when the only claimed injury is an intangible harm such as emotional distress.'" (*Kesner*, *supra*, 1 Cal.5th at p. 1148, quoting *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 421.) Hernandez was shot and suffered serious physical injuries.  Her injuries are certain and compensable under the law. (*Kesner*, at p. 1148.)  The second foreseeability factor weighs against finding an exception to the duty of care.

---

[3]     Jensen also contends that "property or person" in section 1714 precludes a duty of care because Jensen did not control the "property" where the shooting occurred and her "person" was not involved in the shooting.  Contrary to this narrow interpretation, section 1714 "establishes the general duty of each person to exercise, *in his or her activities*, reasonable care for the safety of others." (*Cabral*, *supra*, 51 Cal.4th at p. 768, italics added.)

The third *Rowland* factor, "the closeness of the connection between the defendant's conduct and the injury suffered[,]' [citation] is strongly related to the question of foreseeability itself." (*Cabral*, *supra*, 51 Cal.4th at p. 779.) "Generally speaking, where the injury suffered is connected only distantly and indirectly to the defendant's negligent act, the risk of that type of injury from the category of negligent conduct at issue is likely to be deemed unforeseeable. Conversely, a closely connected type of injury is likely to be deemed foreseeable." (*Ibid*.)

Hernandez was injured when a loaded rifle fell from a bedroom closet. That injury could result from the presence of an unsecured rifle in a residence is clearly foreseeable. The presence of the loaded rifle in the home, and Jensen's failure to secure her father's guns or advise Duran and Hernandez of their presence, are closely connected to Hernandez's gunshot injury. Duran's intervening conduct of removing the oxygen tank from the closet did not create a risk that Hernandez would be shot; the presence of an unsecured, loaded firearm in the home created that risk. The third foreseeability factor weighs against finding an exception to the duty of care.[4]

---

[4] Jensen argues that an individual owes no general duty to warn or control the conduct of family members with respect to guns or weapons. The cases Jensen cites involve claims based on the failure of family members to prevent shootings by other family members, not the failure to secure weapons or disclose their presence to those likely to be accidentally injured by them. (See *Smith v. Freund* (2011) 192 Cal.App.4th 466, 475 [affirming summary judgment for parents, finding that son's shooting of two individuals was not foreseeable and thus parents did not owe plaintiffs duty of care]; *Todd v. Dow* (1993) 19 Cal.App.4th 253,

### 3. *Policy factors*

Having concluded it is reasonably foreseeable that an unsecured, loaded firearm stored in a home could accidentally discharge and cause injury, we turn to the policy considerations for and against the imposition of liability. (*Kesner*, *supra*, 1 Cal.5th at pp. 1149-1150.) These policy considerations include the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved. (*Rowland*, *supra*, 69 Cal.2d at p. 113.)

The Supreme Court has explained, "We have previously assigned moral blame, and we have relied in part on that blame in finding a duty, in instances where the plaintiffs are particularly powerless or unsophisticated compared to the defendants or where the defendants exercised greater control over the risks at issue." (*Kesner*, *supra*, 1 Cal.5th at p. 1151.) The moral blame factor weighs against creating an exception for employers and supervisors of home healthcare aides because those familiar with a home are far better positioned to protect against the risk of accidental residential shootings than outside workers are. A healthcare aide employed in a private home cannot be expected to search the home for firearms and,

---

259 [affirming summary judgment for parents, finding parents had no duty to supervise or control adult son's activities]; *Wise v. Superior Court* (1990) 222 Cal.App.3d 1008, 1014 [holding wife had no duty to prevent husband from committing unforeseeable sniper attack].)

12

moreover, determine whether they are loaded. The moral blame factor does not support creating an exception to the duty of care.

"The overall policy of preventing future harm is ordinarily served, in tort law, by imposing the costs of negligent conduct upon those responsible. The policy question is whether that consideration is outweighed, for a category of negligent conduct, by laws or mores indicating approval of the conduct or by the undesirable consequences of allowing potential liability." (*Cabral*, *supra*, 51 Cal.4th at pp. 781-782.) In evaluating the burden that a tort duty would impose on the defendant and the community, the court's "duty analysis is forward-looking, and the most relevant burden is the cost to the defendants of upholding, not violating, the duty of ordinary care." (*Kesner*, *supra*, 1 Cal.5th at p. 1152.)

Jensen argues that imposing an "unlimited duty to caregivers" on adult children assisting elderly parents will discourage individuals from hiring home healthcare workers and, in turn, preclude elderly people from remaining in their homes. The duty here, however, is not as wide-ranging as Jensen describes. It is a duty to exercise reasonable care for the safety of others when one knows firearms are present. Public policy supports the safe storage and handling of guns, particularly in circumstances where one party has superior knowledge and the ability to prevent accidental shootings. These factors weigh against creating a duty exception.

The final policy factor is the availability of insurance for the risks involved. Jensen concedes she has insurance coverage for at least some of her liability. The insurance factor weighs against creating an exception to the duty of care.

13

C. *Substantial Evidence Supports the Jury's Finding that Jensen's Negligence Was a Substantial Factor in Causing Hernandez's Harm*

Jensen next argues she did not cause Hernandez's harm. Jensen characterizes this argument as a question of law to be decided by the court. On this factual record, however, the decision whether Jensen's negligence caused Hernandez's harm was a question of fact for the jury.

Breach of duty is usually a fact issue for the jury. (*Constance B. v. State of California* (1986) 178 Cal.App.3d 200, 207; see also *Vasquez, supra,* 118 Cal.App.4th at p. 278 ["the elements of breach of . . . duty and causation are ordinarily questions of fact for the jury's determination"].) "[G]iven a breach of duty by the defendant, the decision whether that breach *caused* the damage (that is, causation in fact) is again within the jury's domain . . . ." (*Constance B.,* at p. 207, original italics.) Only "where reasonable [people] will not dispute the absence of causality, [may] the court . . . take the decision from the jury and treat the question as one of law." (*Ibid.*)

Jensen argues her conduct and Hernandez's harm are insufficiently close because "one simply could not foresee" that a loaded rifle would be kept in a closet near an oxygen tank and that Duran's removal of the tank would cause the rifle to fall and discharge. In one sense, this argument restates Jensen's unpersuasive foreseeability argument addressed above. In another sense, this argument is a contention that substantial evidence did not support the jury's conclusion that Jensen's negligence was a substantial factor in causing Hernandez's harm. That contention is also unpersuasive.

Jensen knew her father had handguns and rifles in the house, including a handgun in the bedroom nightstand. Jensen

14

oversaw Duran's and Hernandez's work and knew they had access to substantial areas of the house, including her parents' bedroom. Despite Jensen's knowledge that her father kept firearms in the house and that Duran's and Hernandez's job duties required them to work throughout much of the residence, Jensen neither secured the firearms nor warned Duran and Hernandez of their presence. The jury could reasonably conclude from this evidence that Jensen's conduct contributed to Hernandez's harm. (See *Bockrath v. Aldrich Chemical. Co.* (1999) 21 Cal.4th 71, 79 ["The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical."]; *Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 253 ["[c]ausation in fact is ultimately a matter of probability and common sense"].) Substantial evidence supports the jury's finding that Jensen's negligence was a substantial factor in causing Hernandez's harm.[5]

---

[5] Jensen also contends the trial court erred in denying her summary judgment motion, in which she argued the same issues she challenges from the trial, i.e., that she did not owe Hernandez a duty of care and that she did not cause Hernandez's harm. "As a general rule, the denial of summary judgment is harmless error after a full trial covering the same issues." (*Legendary Investors Group No. 1 LLC v. Niemann* (2014) 22 Cal.App.4th 1407, 1410; see also *Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1011 ["general rule [is] that denial of [summary judgment] motions may not be challenged [on appeal] because the parties litigated the same issues at trial"].) Moreover, as discussed, Jensen owed Hernandez a duty of care, and substantial evidence supports the jury's finding that Jensen's negligence caused Hernandez's harm.

D.	*The Trial Court Did Not Err in Instructing the Jury, and the Verdict Form Was Proper*

Jensen last argues the trial court erred by failing to instruct the jury that ownership, maintenance, or control of the premises was a prerequisite to finding Jensen liable for general negligence.  Jensen also argues the verdict form reflecting the general negligence instruction was erroneous.

The trial court instructed the jury on the elements of Hernandez's general negligence claim with CACI No. 400.  CACI No. 400 states that to find a defendant liable for general negligence, the jury must find the plaintiff proved all of the following:  (1) the defendant was negligent; (2) the plaintiff was harmed; and (3) the defendant's negligence was a substantial factor in causing the plaintiff's harm.  Jensen argues that because Hernandez's injury occurred in Jensen's parents' home, to prove general negligence Hernandez also must prove Jensen owned, maintained, or controlled the house.

Jensen's argument conflates general negligence and premises liability theories.  Ownership, maintenance, or control of the home is not required to find Jensen liable for general negligence.  Jensen's liability arises from the jury's finding that Jensen failed to use reasonable care and that her negligence was a substantial factor in causing Hernandez's harm.  Premises liability, by contrast, "'is grounded in the possession of the premises and the attendant right to control and manage the premises'"; accordingly, "'mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act.'"  (*Kesner*, *supra*, 1 Cal.5th at p. 1158.)  Jensen's negligence is not "grounded in the possession" of and right to control her parents' home.  Jensen's

16

negligence derives from her failure to protect or warn against a known danger with a foreseeable risk of harm.  The trial court did not err in instructing the jury on the elements of Hernandez's general negligence claim, and the verdict form containing those elements was proper.

## DISPOSITION

The judgment is affirmed.  Hernandez shall recover her costs on appeal.


MCCORMICK, J.*


We concur:


PERLUSS, P. J.


SEGAL, J.

---

*     Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.