Filed 11/21/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CASEY SPROUL et al.,<br><br>　　　Plaintiffs and Appellants,<br>v.<br>LESLIE VALLEE,<br><br>　　　Defendant and Respondent. | A172205<br><br>(Contra Costa County<br>Super. Ct. No. C2300775) |

Plaintiffs Casey Sproul and Andrew Sproul and their two minor children sued their neighbor, defendant Leslie Vallee, after Leslie's husband physically assaulted Casey and then took his own life.[1] The trial court sustained defendant's demurrer without leave to amend, concluding the complaint did not show Leslie had a duty to control her husband's behavior. Although we agree with this ruling, we conclude plaintiffs should have had the opportunity to amend their complaint to state a cause of action for negligent misrepresentation, and accordingly we reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Filing of Complaint and First Amended Complaint*

Plaintiffs filed a complaint against Leslie both as an individual and as personal representative of the estate of her husband, Laurent Vallee (Larry),

---

[1] Because plaintiffs share the same last name with each other, as do defendant and her late husband, we will refer to each of them by their first names in the interest of clarity. We intend no disrespect.

1

on April 4, 2023.  Leslie answered the complaint.  After plaintiffs then learned there was no probate action for Larry, the parties stipulated that plaintiffs could file a first amended complaint naming, in addition to Leslie individually, the Estate of Laurent Vallee, and the trial court granted leave for its filing.

***Allegations of First Amended Complaint***

The operative first amended complaint details a neighborhood dispute that began the day Leslie and Larry moved into a home in Moraga next door to plaintiffs in June 2017.  That night, Leslie came to plaintiffs' house and told them that their air-conditioning unit was too loud and Larry was angry.  The next month, Casey and Andrew were awakened around midnight by the sound of yelling and cursing coming from the Vallees' home.  Leslie knocked on their front door and again told them that Larry was angry about the noise coming from their air-conditioning unit.  She told them, " 'Oh he [Larry] is mad, and trust me you don't want to make him more mad.' "  Casey and Andrew viewed this statement as a threat and reported the incident to the Moraga Police Department the next day.

Over the next year, Leslie continued to confront Casey and deliver Larry's complaints in a threatening manner.  In September 2020, Casey removed two trees from the Sprouls' property, which created dust and dirt.  Leslie and Larry came over, screaming profanities at Casey and yelling that she did not take care of her home.  Larry shoved Casey in anger, and Leslie did not do anything.  Casey reported the incident to the police.

Leslie continued to confront Casey and deliver Larry's complaints in a threatening manner.  Casey again contacted the police in March 2021 to document the Vallees' threatening behavior.  Fearing it would escalate matters if they sought a restraining order, Casey and Andrew asked Leslie

2

whether there were guns at the Vallee residence and whether Larry was dangerous. Leslie told them there were no firearms and "diminished Larry's conduct."

Larry also menaced other neighbors. In 2018 or 2019, a neighbor called the police when Larry fired a pellet gun at him, but Leslie told the police there were no firearms in the residence. Larry also discharged a rifle in the neighborhood, shot a BB gun at adolescents, engaged in a fist fight when a neighbor's dog walked past the Vallees' home, shot rodents and left them in neighbors' yards, vandalized neighbors' property, threatened, yelled and threw things at neighbors, used a megaphone and bullhorn to harass neighbors, and made racial slurs. Leslie did nothing to "address her husband's rage, help him receive appropriate medication, or work with neighbors to reduce the risk of injury or death from Larry's behavior."

The final incident alleged in the first amended complaint, and the incident giving rise to plaintiffs' claims, took place on the morning of February 12, 2022. Leslie went for a walk, leaving Larry at home alone. Casey was at home with her two sons, aged nine and 11, and she was in her side yard breaking down empty cardboard boxes for the recycling bin. Larry approached the gate, speaking in an angry tone, unlocked the gate, and approached Casey with a metal baseball bat in his hand. He grabbed her face, shoved her to the ground, hit her in the head and body with his fists, repeatedly struck her head with the metal bat, and ripped a handful of hair from her scalp. He stopped attacking her when Casey's nine-year-old son ran to her aid and yelled at Larry to stop hurting her. Larry quietly returned to his house.

Multiple people called 911, including Casey's 11-year-old son, who saw his mother bleeding from her head. Police officers came to the scene, but

3

Larry had barricaded himself inside the house.  A standoff ensued, during which Leslie returned home and told police that there were guns in the house.  Finally, Larry took his own life by shooting himself with an AR-15 rifle.  Thirteen firearms were found in the home, most of them in the bedroom Leslie and Larry shared, and all registered in the names of Leslie or her sons.

On these facts, plaintiffs asserted a cause of action against Leslie for negligence, alleging she breached a duty to prevent foreseeable harm by delivering Larry's threats and complaints; failing to warn neighbors about his anger and violent propensities; purchasing firearms and allowing Larry access to them; failing to require him to seek mental health treatment; telling Casey and Andrew he did not have violent propensities or access to firearms; telling law enforcement on multiple occasions that no firearms were present in the home; and failing to take action when she saw his behavior escalating toward neighbors, particularly Casey.  Plaintiffs also alleged causes of action against Leslie for intentional and negligent infliction of emotional distress and loss of consortium.  Against Larry's estate, they alleged causes of action for negligence, negligence per se, assault and battery, intentional and negligent infliction of emotional distress, and loss of consortium.  The liability of Larry's estate is not at issue in this appeal.

### Trial Court's Rulings

Leslie demurred to the first amended complaint.  Treating the demurrer as a motion for judgment on the pleadings because it was filed after the date a responsive pleading was due, the trial court granted it.  The court concluded the facts alleged did not indicate that Leslie had a special relationship with either Casey or Larry that would give rise to a duty to protect Casey from Larry.  It also ruled Leslie's alleged conduct did not support a claim for intentional infliction of emotional distress.  Concluding

4

plaintiffs had not shown a reasonable possibility of amendment, the court denied leave to amend. The court entered judgment dismissing the action as to Leslie only.

Plaintiffs filed a motion for a new trial, asserting, among other things, that the first amended complaint adequately alleged a cause of action for negligent misrepresentation and that the trial court used the wrong standard in denying leave to amend. The trial court denied the motion, noting as it did so that plaintiffs had never before asserted that they sought to assert a cause of action for negligent misrepresentation. This timely appeal ensued.

## DISCUSSION

### I. Legal Standards

The standards for considering a demurrer or a motion for judgment on the pleadings are well settled. "[T]he trial court examines the pleading to determine whether it alleges facts sufficient to state a cause of action under any legal theory, with the facts being assumed true for purposes of this inquiry." (*Campaign for Quality Education v. State of California* (2016) 246 Cal.App.4th 896, 904 (*Campaign for Quality Education*); see *Starlight Cinemas, Inc. v. Massachusetts Bay Ins. Co.* (2023) 91 Cal.App.5th 24, 31 (*Starlight Cinemas*) [motion for judgment on pleadings governed by same standards as demurrer].) This rule holds good "regardless of the title under which the factual basis for relief is stated. . . . '[W]e are not limited to plaintiffs' theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory.' " (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 (*Quelimane*).)

On appeal, "[o]ur review is de novo. [Citations.] '[W]e treat the properly pleaded allegations of [the] complaint as true, and also consider those matters subject to judicial notice.' " (*Campaign for Quality Education*, *supra*, 246 Cal.App.4th at p. 904.) We construe the allegations of the complaint liberally, giving them a reasonable interpretation and treating the demurrer as admitting all properly pleaded facts. (*Ibid*.; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 (*Aubry*).) We do not, however, "assume the truth of contentions, deductions or conclusions of law." (*Aubry*, at p. 967.)

The plaintiff has the burden to show a reasonable possibility that any defect can be cured by amendment, and " ' "may [even] meet this burden [for the first time] on appeal." ' " (*Starlight Cinemas*, *supra*, 91 Cal.App.5th at p. 32; see *Aubry*, *supra*, 2 Cal.4th at p. 971; *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) " 'If there is any reasonable possibility that plaintiff can state a good cause of action, it is error and an abuse of discretion to sustain the demurrer without leave to amend.' " (*Campaign for Quality Education*, *supra*, 246 Cal.App.4th at p. 904.)

## II.    Negligence

The trial court concluded the complaint did not state a cause of action against Leslie for negligence because she did not have a special relationship with either Larry or Casey that gave rise to a duty to protect Casey from the harm Larry caused. Plaintiffs contend the first amended complaint alleges the "underpinnings" of such a relationship between Larry and Leslie that could be clarified further by amendment. We disagree, because the allegations of the complaint do not show Leslie's relationship with Larry entailed an ability to control his behavior and because, even assuming their relationship was "special" for the purposes before us, in the circumstances

6

alleged here policy considerations preclude assigning to Leslie the duty plaintiffs seek to establish.

In *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204 (*Brown*), our high court considered "how courts should decide whether a defendant has a legal duty to take action to protect the plaintiff from injuries caused by a third party." (*Id.* at p. 209.) Defendants in *Brown* were two organizations that allegedly failed to protect young athletes from sexual abuse by a coach. (*Id.* at p. 210.) In analyzing whether these organizations owed a legal duty to an abused athlete, the Court prescribed a two-step analysis: "First, the court must determine whether there exists a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect. Second, if so, the court must consult the factors described in [*Rowland v. Christian* (1968) 69 Cal.2d 108] to determine whether relevant policy considerations counsel limiting that duty." (*Brown*, at p. 209.)

The court's analysis began with general principles: The elements of a cause of action for negligence are that the " 'defendant had a duty to use due care,' " the defendant breached that duty, and the breach caused the resulting injury. (*Brown*, *supra*, 11 Cal.5th at p. 213.) The existence of a legal duty of care is a threshold matter, and whether it exists is a question of law for the court to resolve. (*Ibid.*) In general, a person is responsible only when the defendant has created a risk of harm, including when " ' "the defendant is responsible for making the plaintiff's position worse." ' " (*Id.* at p. 214.) And, in general, one who has not created the risk of harm is not liable for failing to take affirmative action to protect another from that risk. (*Ibid.*)

There are exceptions to this rule, however, under which "a defendant may have an affirmative duty to protect the plaintiff from harm at the hands

of a third party, even though the risk of harm is not of the defendant's own making." (*Brown*, *supra*, 11 Cal.5th at p. 215.) The exception at issue here applies if the defendant "is in what the law calls a 'special relationship' with either the victim or the person who created the harm." (*Ibid.*; accord, *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 619 (*Regents*).) Under this exception, "a duty to control may arise if the defendant has a special relationship with the foreseeably dangerous person that entails an ability to control that person's conduct" so as to prevent the harm. (*Regents*, at p. 619; accord, *Brown*, at p. 216 ["a special relationship between the defendant and the dangerous third party is one that 'entails an ability to control [the third party's] conduct' "].)[2] In the absence of either an act by the defendant that increases the risk of injury or a special relationship creating an affirmative duty to protect the plaintiff from harm, the defendant owes no legal duty to the defendant. (*Brown*, at p. 216.)

Analytically, the first question we face is whether, on the facts that are alleged or that plaintiffs seek to include in a second amended complaint, Leslie had a special relationship with Larry, entailing an ability to control his conduct and giving rise to a duty to protect others from him. Such a special relationship includes that between parent and child, master and servant, the possessor of land and a licensee, and " '[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled.' " (*Wise v. Superior Court* (1990) 222 Cal.App.3d 1008, 1013 (*Wise*).) But where " 'the natural relationship between the parties

---

[2] This exception may also apply if the defendant has "a special relationship with the potential victim that gives the victim a right to expect protection," as may arise between common carriers and passengers or innkeepers and guests. (*Regents*, *supra*, 4 Cal.5th at pp. 619–620.) Plaintiffs do not contend they had such a relationship with Leslie.

. . . creates no inference of an ability to control, the actual custodial ability must affirmatively appear.' " (*Id.* at pp. 1013–1014.)  In other words, "[t]he absence of an ability to control is fatal to a claim of legal responsibility." (*Todd v. Dow* (1993) 19 Cal.App.4th 253, 259 (*Todd*).)

*Wise* is instructive.  The defendant there was the wife of a man who "mounted a sniper attack from the roof of his home, severely injuring a number of passing motorists, including plaintiffs, before taking his own life." (*Wise, supra*, 222 Cal.App.3d at p. 1011.)  The decedent allegedly had a history of erratic and violent behavior, which included arrests, alcoholism, drug use, psychiatric treatment, collecting wild and dangerous animals at the couple's residence, "romping" naked in the backyard with small pet alligators, collecting an arsenal of firearms, and threatening to shoot a neighborhood cat.  (*Id.* at pp. 1011–1012.)  The plaintiffs contended the wife was negligent when she " 'permitted decedent to occupy the house with knowledge that he was a human time bomb, provided him access to the means to commit his rampage, set him off by leaving him alone and unsupervised, but did nothing to protect or warn others within the zone of danger thus created.' " (*Id.* at p. 1012.)  The appellate court concluded the complaint did not allege that the wife had a special relationship with the decedent that involved the ability to control his conduct;[3] rather than showing affirmatively her ability to control

---

[3] We recognize it seems anomalous to say the relationship between two spouses is not "special," but in the context we are considering, "special relationship" is a term of art.  That is, "to say that a 'special relationship' exists is to say nothing other than the factors favoring imposition of a duty of care in particular circumstances outweigh the countervailing factors (one of which is that the harm was caused by a third person).  The existence of a 'special relationship' does not create the duty.  'Special relationship,' rather, is simply a label expressing the conclusion that the facts, considered in light of the pertinent legal considerations, support the existence of a duty of care." (*Hansra v. Superior Court* (1992) 7 Cal.App.4th 630, 646 (*Hansra*).)

his behavior, the complaint instead showed her *lack* of control over him. (*Id.* at p. 1014.) The court thus issued a writ of mandate directing the trial court to sustain the defendant's demurrer without leave to amend. (*Id.* at p. 1016.)

Courts have similarly found no special relationship entailing an ability to control—and resulting duty to do so—in other family relationships. (See, e.g., *K.G. v. S.B.* (2020) 46 Cal.App.5th 625, 628, 631–632 (*K.G.*) [allegations that father provided adult son with apartment, car, and money did not demonstrate ability to control him]; *Todd*, *supra*, 19 Cal.App.4th at pp. 256, 260 [parents of adult child not responsible for accidental shooting because they had no duty to control or supervise him]; *Hansra*, *supra*, 7 Cal.App.4th at pp. 633–634, 645 [allegations did not show mother and brother of violent person had ability to control him]; *Megeff v. Doland* (1981) 123 Cal.App.3d 251, 261 [adult daughter lacked ability to control conduct of abusive father].)

We agree with the trial court that the allegations of the first amended complaint do not indicate that Leslie had the ability to control Larry. Their relation as husband and wife does not establish such an ability (see *Wise*, *supra*, 222 Cal.App.3d at pp. 1011, 1013–1014), and nothing in the complaint suggests Leslie had any control over Larry's angry and occasionally violent outbursts. Plaintiffs argue the allegations show Leslie *did* have the ability to control Larry: she delivered his threats to their neighbors rather than letting him take out his aggression on them, and she told plaintiffs that they " 'don't want to make him more mad.' " We are not persuaded that these allegations show Leslie could have prevented Larry from behaving violently—in fact, a more natural inference is that she was warning plaintiffs that his anger was uncontrollable.

Even assuming, however, that the relationship between Larry and Leslie was "special" for present purposes, plaintiffs have not alleged facts

10

that establish Leslie had a duty to protect or warn plaintiffs. (See *Brown*, *supra*, 11 Cal.5th at p. 209.) The next step in our analysis requires us to address whether, if there is a special relationship between spouses, considerations of policy nonetheless counsel against imposing a duty of care on one spouse to protect third parties from the other spouse. Factors the Supreme Court directs us to consider in addressing this policy issue "include: 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Regents*, *supra*, 4 Cal.5th at p. 628, quoting *Rowland v. Christian*, *supra*, 69 Cal.2d at p. 113.) For two reasons, these factors counsel against finding a duty here.

First, there are no allegations of a known threat directed specifically at Casey. The case is therefore clearly distinguishable from *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, in which our high court concluded a psychotherapist's special relationship with a patient entailed a duty to use reasonable care to protect a foreseeable victim whom the patient had said he intended to kill. (*Id.* at pp. 430, 436–437.) Although the complaint here alleges facts from which one could reasonably infer that Leslie knew Larry to have an uncontrollable temper and violent tendencies, there are no allegations that Leslie knew Larry planned to harm Casey physically or that it was foreseeable his violence directed specifically toward her would escalate. Indeed, plaintiffs built their case around the idea that Larry indiscriminately "menaced the whole neighborhood." (Capitalization and

11

boldface omitted.)  Thus, *Rowland* factors addressing the foreseeability of harm and the strength of the connection between the defendant's conduct and the plaintiffs' injuries lean against finding a duty.

Second, California's "strong public policy favoring marriage" (*Koebke v. Bernardo Heights Country Club* (2005) 36 Cal.4th 824, 844) counsels against intruding on the marital relationship with an obligation owed to third parties.  Under California law, "a spouse may refuse to disclose or may prevent the other spouse from disclosing confidential communications between them during their marriage."  (*People v. Sinohui* (2002) 28 Cal.4th 205, 208 (*Sinohui*); Evid. Code, § 980.)  Although this privilege must yield if a marital communication was made to facilitate a crime or fraud (Evid. Code, § 981), the allegations do not support a conclusion that any of Larry's communications to Leslie were made to assist him in committing a crime.  California also recognizes a spousal testimony privilege, which would have entitled Leslie to refuse to testify against Larry in a court of law.  (*Sinohui*, at p. 208; Evid. Code, § 970.)  Surely, if the law recognizes that testifying against one's spouse " 'would seriously disturb or disrupt the marital relationship" to society's detriment (*People v. Barefield* (2021) 68 Cal.App.5th 890, 900–901), it must also recognize the disruptive impact of imposing a duty to warn one's neighbors of a spouse's violent tendencies.

In sum, we conclude the trial court properly determined that the operative complaint does not establish Leslie owed a duty to warn or protect plaintiffs from her husband, and that it therefore failed to state a cause of action against Leslie for negligence.

## III.  Negligent Misrepresentation

The first amended complaint includes a cause of action against Leslie for negligence, but it does not expressly allege a claim for negligent

12

misrepresentation.  Nevertheless, plaintiffs contend the first amended complaint sufficiently alleges facts that would support such a cause of action and that the demurrer was therefore improperly sustained.  (See *Quelimane, supra*, 19 Cal.4th at p. 38 [demurrer should not be sustained if allegations state cause of action under any legal theory].)

The normal elements of a cause of action for negligent misrepresentation are " '(1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.' " (*Alafi v. Cohen* (2024) 106 Cal.App.5th 46, 65.)  Liability for negligent misrepresentation is ordinarily imposed only on those who supply information in the course of a business or profession.  (*Garcia v. Superior Court* (1990) 50 Cal.3d 728, 734.)  An exception exists, however, when a negligent misrepresentation involves a risk of *physical* harm.  (*Ibid*.)  In such a case, our high court has set forth the elements slightly differently, relying on the Restatement Second of Torts, section 311:  " 'One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information,' " where the other person, or someone else the speaker should expect to be put in peril, is harmed.  (*Garcia*, at p. 734; see also *Weissich v. County of Marin* (1990) 224 Cal.App.3d 1069, 1081 (*Weissich*) [among elements, plaintiff must allege "the victim actually and reasonably relied on the alleged misrepresentation"].)  No special relationship is required for liability under this theory.  (*Garcia*, at p. 734.)

Plaintiffs contend the factual basis for these elements is set forth in the first amended complaint.  They assert that Leslie made actionable

13

misrepresentations when she "diminished Larry's conduct" in response to their inquiry about whether he was dangerous, when she told Casey and Andrew he did not have violent propensities, and when she said there were no firearms in the home. Leslie could not reasonably have believed these statements to be true, they assert, because she knew Larry had shot BB guns at children, gotten into a fistfight, and had police respond to his home, and because the home contained 13 guns, some of them registered to Leslie. And, they argue, their reliance on her statements is supported by the allegation that they spoke with Leslie "[i]nstead of seeking a restraining order for fear it would escalate things." In their reply brief, they also suggest they can amend the complaint to allege that, in reliance on Leslie's representations, they did not take other protective measures, such as getting security cameras or moving away.

But even if these elements are met, in our view the complaint does not adequately allege that plaintiffs *reasonably* relied on Leslie's statements. Plaintiffs allege that shortly after moving in, Leslie came to their door, told them Larry was angry about the noise their air conditioner was making, and told them, " '[T]rust me you don't want to make him more mad.' " Plaintiffs saw this as a threat and reported it to the police. In 2020, Larry's behavior became violent, when he came to plaintiffs' property, screamed profanities at them, and shoved Casey, leading Casey to make another police report. Leslie continued to deliver Larry's complaints in a threatening manner, and in the year following the 2020 incident Casey again contacted the police to document the Vallees' threatening behavior. Plaintiffs had personal knowledge of this pattern of behavior, which bears on the reasonableness of any reliance, but more importantly, they do not allege that they actually believed Leslie's "diminish[ment]" of Larry's conduct or accepted as true her

14

assurances that Larry did not have violent tendencies and there were no guns in their home.

*Weissich* is instructive. The plaintiffs were the heirs of a district attorney, William Weissich, who was killed by one Malcolm Schlette, whom he had successfully prosecuted 30 years previously. (*Weissich, supra*, 224 Cal.App.3d at p. 1073.) At the sentencing hearing, Schlette had threatened the lives of Weissich and others involved in the prosecution and trial. (*Ibid.*) Shortly before his release on parole 11 years later, in 1966, Schlette again threatened the lives of Weissich and others, but violated his terms of parole shortly thereafter and was returned to prison. (*Ibid.*) Weissich was warned of the threats and took additional precautions for some time. (*Ibid.*) Before Schlette was finally released in 1975 after serving his full term, government officials warned Weissich of his impending release and his plan to carry out a vendetta, and they allegedly undertook to alert Weissich of any threatening behavior. (*Id.* at pp. 1073–1074.) Over the next several years, Schlette was involved in continuing criminal behavior that included illegal possession of firearms, but the government officials did not warn Weissich. (*Id.* at p. 1075.) Finally, in 1986, Schlette went to Weissich's law office and shot and killed him before taking his own life. (*Ibid.*)

On these facts, the plaintiffs in *Weissich* alleged the defendants had assumed a duty to warn Weissich of Schlette's continuing criminal behavior, that Weissich reasonably relied on their promise, and that the defendants breached their duty. (*Weissich, supra*, 224 Cal.App.3d at p. 1075.) The trial court sustained the defendants' demurrer without leave to amend. (*Ibid.*) During the pendency of the plaintiffs' appeal, the California Supreme Court decided *Garcia*, and the plaintiffs sought to amend the complaint to state a new cause of action for negligent misrepresentation. (*Id.* at pp. 1075–1076.)

15

The appellate court first concluded that the implied promise by some of the defendants' representatives, in 1975, did not impose a duty to inform Weissich of Schlette's criminal conduct years later. (*Weissich*, *supra*, 224 Cal.App.3d at pp. 1079–1080.) It went on to conclude that a claim for negligent misrepresentation could not be stated, in part because the complaint did not allege facts supporting a conclusion Weissich *reasonably* relied on the alleged misrepresentation. (*Id*. at p. 1083.) That is, despite the plaintiffs' contention that the 1975 misrepresentation lulled Weissich into a false sense of security so he failed to take steps to protect himself, the facts *also* showed Weissich was aware Schlette had a plan for revenge that endured throughout his 20-year prison sentence. As a result, "Schlette's potential for violence would necessarily have been of concern to Weissich whether or not he had any knowledge of Schlette's conduct after his release from prison." (*Ibid*.)

Similarly here, the allegations of the second amended complaint establish that Casey and Andrew knew something of Larry's volatile temper and his propensity for violence, not least because Leslie had warned them not to make Larry " 'more mad' " and Larry had shoved Leslie angrily during a confrontation. Plaintiffs were concerned enough about Larry's threatening behavior that they made at least three police reports. And alongside these allegations, plaintiffs have *not* alleged that they reasonably relied on Leslie's dismissal of Larry's violence and her statement that there were no firearms in the home.

Plaintiffs draw our attention to two cases finding actionable a wife's misrepresentations of her husband's violent tendencies. In *Boon v. Rivera* (2000) 80 Cal.App.4th 1322, a police officer was summoned to an emergency at a home at which a man was barricaded; his wife told the officer falsely that

the man was not violent; and she did not disclose that he had an M-16 rifle in the house, he had threatened to kill the first officer at the scene, he had been declared a danger to himself and others, and he had recently held a gun to her head and threatened to kill her and their child. (*Id.* at pp. 1326, 1329.) Relying on the wife's misinformation, the officer responded with nonlethal force, and the husband shot and injured him. (*Id.* at p. 1326.) On these facts, the wife owed a duty of care to the police officer not to misrepresent affirmatively the nature of the hazard he encountered. (*Id.* at p. 1333.)

Another case plaintiffs rely on is *Pamela L. v. Farmer* (1980) 112 Cal.App.3d 206. The complaint there alleged that a wife knew her husband had sexually molested women and children in the past but nevertheless encouraged other parents to allow their children to come to the couple's home while the wife was not present, telling them it would be "perfectly safe." (*Id.* at pp. 208–209.) Although a person generally has no duty to control the conduct of another or warn those endangered by such conduct in the absence of a " 'special relationship' either to the third person or to the victim," this principle had "no application where the defendant, through his or her own action (misfeasance) has made the plaintiff's position worse and has created a foreseeable risk of harm from the third person." (*Id.* at p. 209.) The appellate court concluded that because the wife "by her own acts increased the risk of" harm to the plaintiffs, she could be held to have unreasonably exposed them to harm, and the trial court erred in sustaining her demurrer to the complaint. (*Id.* at pp. 208, 210, 212.)

The facts alleged in this case differ from those in *Boon* and *Pamela L.*, in that plaintiffs here had other information about Larry that would have affected the reasonableness of their relying on Leslie's statements. The allegations of the complaint show plaintiffs had personal experience with

17

Larry's temper and willingness to use physical force when angry. The complaint also alleges other incidents suggesting Larry's dangerousness: that Larry discharged a BB gun and a firearm in the neighborhood, shot rodents and left them in neighbors' yards, used a megaphone and bullhorn to harass neighbors, and engaged in an apparently unprovoked fist fight when a neighbor's dog walked past the Vallees' home. But it does not allege plaintiffs were unaware that Larry fired guns in the neighborhood and was violent toward other neighbors. Nor does it allege any other facts that might render reasonable their reliance on Leslie's alleged assurances in light of their direct experience of Larry's threatening behavior.

In short, because plaintiffs have not pleaded reasonable reliance, the first amended complaint does not allege a cause of action against Leslie for negligent misrepresentation.

## IV.    Denial of Leave to Amend

Although we conclude the first amended complaint falls short, we must also determine whether the trial court abused its discretion in denying leave to amend it. The general rule is that when there is a demurrer to an original complaint, "denial of leave to amend constitutes an abuse of discretion unless the complaint 'shows on its face that it is incapable of amendment.' " (*Eghtesad v. State Farm General Ins. Co.* (2020) 51 Cal.App.5th 406, 411.) As our high court has explained, leave to amend is "liberally allowed as a matter of fairness" if the plaintiff has not had the opportunity to amend the complaint in response to a demurrer. (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747 (*City of Stockton*).)

Although the complaint before us is an amended complaint, we conclude it is appropriate to apply the rule of liberal amendment here. Rather than demurring to the original complaint, defendants chose to answer

18

it. The complaint was amended in response not to a demurrer, but to plaintiffs learning they had erroneously sued Leslie as personal representative for Larry's estate. Thus, the demurrer to the first amended complaint was plaintiffs' first opportunity to meet Leslie's theory that the complaint failed to allege a duty to protect them from Larry's violence. (See *City of Stockton*, *supra*, 42 Cal.4th at p. 747 [allowing leave to amend when demurrer to second amended complaint was plaintiff's first chance to respond to Government Claims Act defense].)

With these standards in mind, we consider the causes of action before us. As to their negligence claim, plaintiffs urge that they would be able to amend the complaint to allege Leslie could control Larry's aggressive behavior and had a duty to warn them of the threat he posed. They propose to add allegations that Leslie acquired the couple's house as her sole and separate property, and on the same day Larry quitclaimed all property rights in the home to Leslie; that Larry was unemployed and had no assets in his name; that Larry had never been physically abusive to Leslie in the 32 years of their marriage; that Leslie knew Larry had committed various crimes, including an assault or battery in 1995 and vandalism in 1996; that Leslie saw Larry engaged in a fistfight with someone whose dog walked onto the property and did nothing; that after Larry squeezed an airhorn directly into the ear of someone who was playing music in his car with the window down, Leslie described his actions as a harmless prank; that Larry once shot a BB gun at high school students; and that Leslie showed no reaction when Andrew told her that Larry had attacked Casey.

We are not persuaded that these additions would support a cause of action for negligence under the standards we have discussed. Plaintiffs rely particularly on the fact that the house and other assets were placed solely in

19

Leslie's name to argue she was able to control him. Whatever the reasons for the couple's financial arrangements, they do not show Leslie had any control over Larry's anger and violent behavior, nor that it would be appropriate to burden the marital relationship with a duty to protect or warn third parties. (See *Sinohui, supra,* 28 Cal.4th at p. 208 [marital privilege]; *K.G., supra,* 46 Cal.App.5th at p. 633 [*Rowland* factors counsel against imposing a duty of care on those who provide financial support to an adult family member].) The same is true, in our view, of the proposed allegations that defendant committed crimes some 25 years previously and that he menaced other neighbors and passers-by. These do not show that Leslie owed a duty to *plaintiffs* to warn them of her husband's behavior. (See *Regents, supra,* 4 Cal.5th at p. 621 ["a special relationship is limited to specific individuals"].) In sum, plaintiffs have not shown they could amend the complaint to allege Leslie had an affirmative duty to protect plaintiffs from Larry's actions (see *Brown, supra,* 11 Cal.5th at p. 216), and thus the trial court did not abuse its discretion in denying leave to amend to state a cause of action on this theory.

We reach a different conclusion as to the proposed cause of action for negligent misrepresentation. As we have explained, the complaint alleges that Larry fired guns in the neighborhood and displayed irrational aggressiveness toward other neighbors, but it does not foreclose the possibility that plaintiffs knew nothing of these incidents. Nor does it foreclose the possibility that plaintiffs' concerns were assuaged by Leslie's reassurances and that, had she not misled them, they would have taken precautions that would have protected them from Larry's violence. Although plaintiffs may have an uphill battle, we are not persuaded that the complaint shows on its face that it is incapable of amendment to allege more clearly what misrepresentations Leslie made, how plaintiffs relied on them to their

detriment, and why their reliance was reasonable.  In the circumstances, it was an abuse of discretion to deny leave to amend to state a cause of action for negligent misrepresentation.

## DISPOSITION

The judgment is reversed.  The matter is remanded for further proceedings consistent with the views expressed in this opinion.  Appellants shall recover their costs on appeal.

TUCHER, P. J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*Sproul et. al. v. Vallee* (A172205)

21

Trial Court:        Contra Costa County Superior Court

Trial Judge:        Hon. Terri Mockler

Counsel:        Coopers, Maryanne B. Cooper, Miles B. Cooper and Andrea G. Posey for Plaintiffs and Appellants

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Wendy S. Dowse and Brooke E. Washburn for Defendant and Respondent